[No. E003251. Fourth Dist., Div. Two. Dec. 23, 1986.]

MEAD REINSURANCE COMPANY et al., Petitioners, v.
THE SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent;
CITY OF LAGUNA BEACH, Real Party in Interest.

**COUNSEL**

Wilson, Elser, Moskowitz, Edelman & Dicker, Jonathon Sher and John M. Haytol for Petitioners.

No appearance for Respondent.

Rutan & Tucker, Marshall M. Pearlman, Philip D. Kohn and Jeffrey Wertheimer for Real Party in Interest.

OPINION

**McDANIEL, J.**—In these original proceedings, petitioners, who are defendants and insurers in the underlying "bad-faith" action, brought against them by the insured plaintiff, City of Laguna Beach (City), are challenging the respondent court's order which granted City's motion to compel discovery. The order requires production of defendant Mead's "claims files relating to every claim similar to the claim at issue. . . made during the period starting from January 1, 1979, and extending to the present [June 4, 1985] . . ."[1]

Defendants, in asserting their challenge in these proceedings to so-called PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS NO. 5," which provided the predicate for the quoted order, argue first that the trial court abused its discretion in "failing to protect petitioners from an overbroad and oppressive request for production." While defendants did not at any stage in the trial court seek a protective order, City yet appears to agree with the foregoing characterization of the principal issue presented by the petition.

The second prong of defendants' challenge to the order is that it "failed to follow procedures authorized by the California Supreme Court for this situation." This contention refers to the order's failure to take into account the provision of section 791.13 of the Insurance Code which prescribes the conditions under which the information contained in insurance claim files may be disclosed. City concedes, if the order challenged be vacated, that any new order entered should also call for compliance with the threshold conditions involving section 791.13 as set forth in *Colonial Life & Accident Ins. Co.* v. *Superior Court* (1982) 31 Cal.3d 785 [183 Cal.Rptr. 810, 647 P.2d 86].

Because City agrees that *Colonial Life* is applicable, and because, prima facie, the order challenged is oppressive, the petition will be granted in terms of the *Colonial Life* guidelines, with further limitations we deem appropriate.

### SYNOPSIS OF TRIAL COURT PROCEEDINGS

The first amended complaint filed by City included as named defendants Mead Reinsurance Corporation (Mead), a foreign corporation[2] with its prin-

---

[1] A more complete text of the request is set forth in the Synopsis of Trial Court Proceedings, *infra.*

[2] Here the policy sold to City by Mead was for excess coverage over $100,000, City having been self-insured up to the floor level of the policy's coverage.

cipal place of business in the State of Illinois, and Patricia Fleischman, Inc. (PFI), the former's claims adjuster in California. The complaint was drafted to include counts for breach of contract, breach of fiduciary duty, breach of statutory obligations arising under section 790.03, subdivision (h) of the Insurance Code, breach of the implied covenant of good faith and fair dealing, and for declaratory relief.

As appears from certain of the allegations of the petition, admitted by City's answer thereto, the objective of City's complaint was to recover damages for an alleged bad faith refusal by Mead to pay City's claim under the excess coverage Mead had written in favor of City. The underlying basis for this claim was a judgment entered against City in favor of two homeowners whose homes had been eroded away as the result of heavy rainwater runoff which washed out the structural foundations of their homes located within City's boundaries. In the third party action, the theory of the award in favor of the homeowners, i.e., the only theory upon which the case was presented to the jury, was *inverse condemnation.* The reason for denial of City's demand for indemnity was and remains a provision in the policy excluding coverage for inverse condemnation claims. After rendition of the third party judgment, however, City and the homeowners entered into an agreement to vacate the judgment, and then a settlement of the two third party claims was effected for $47,000 and $653,000 respectively. It was Mead's later refusal to pay City's demand for indemnification of these amounts which led to this litigation.

One of the counts of City's complaint charged a violation of section 790.03, subdivision (h) of the Insurance Code. At the outset, section 790.03 states "[t]he following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance." Then follow lettered subdivisions which describe a variety of acts falling within the definition. Subdivision (h) recites "[k]nowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices." Thereupon follow 15 numbered paragraphs which constitute an exhaustive catalog of behavior stigmatized by statute. Because any alleged violation of section 790.03, subdivision (h) necessarily contemplates inquiry into how the allegedly culpable insurance company regularly conducts its business in the handling of claims, as a matter of ongoing practice, it is perhaps arguable that the contents of other claim files could be relevant to prove an ongoing practice amounting to the violation charged.

Against the background of the count charging a violation of section 790.03, subdivision (h) and without specifying which of its 15 provisions had allegedly been violated, City pursued certain discovery. Part of this

effort included City's request for production of documents as allowed by section 2031 of the Code of Civil Procedure. The request here pertinent recited:

"The following designated items for production pertain or relate to policies of insurance numbered GLA-1007 and UMB-1039 issued by Defendant MEAD, any and all other policies of insurance issued by *Defendant* MEAD to or for the benefit of Plaintiff CITY OF LAGUNA BEACH, and any and all claims filed pursuant to said policies.

". . . . . . . . . . . . . . . . . .

"5. The claims files relating to every claim similar to the claim at issue in this action relating to alleged damages to privately-owned real property, howsoever styled or characterized, under general liability and umbrella policies of insurance issued by Defendant MEAD to governmental entities similar to those policies at issue in this action (including but not limited to policies numbered GLA-1569 and UMB-1343), which claims were made during the period starting from January 1, 1979 and extending to the present, whether maintained in Defendant MEAD's home office, regional office, field office or any other office."

Mead's written response to this request stated "MEAD objects to this request to this request [*sic*] on the ground the terms 'every claim similar to the claim at issue in this action' are vague and ambiguous in the context used. Further, this request is not reasonably calculated to lead to the discovery of admissible evidence and is overbroad. However, assuming that the term 'claim' as used in the context of this request refers to the *Mallegg* and *McArthur* actions as referred to in plaintiff's Complaint, MEAD further objects to this request in that the information sought is privileged and protected by the Insurance Privacy and Protection Act, Insurance Code § 791.01 et seq. Finally, this request is burdensome, oppressive and constitutes harassment in that it would require MEAD to review thousands of files in order to locate documents responsive to this request and it would require MEAD to transport potentially thousands of files from its records depository located in at [*sic*] 90 John Street, New York, New York to Costa Mesa, California."

Among other things, the foregoing response led to City's motion to compel. The papers supporting the motion to compel were voluminous and dealt exhaustively with the delays and dilatory tactics of which City complained, including much of the correspondence purportedly involved in efforts to cope with such tactics.

In responding to the motion, defendants pointed out that Mead's claim files are located at the offices of defendant PFI in New York City, and that it, Mead, had already responded to requests to produce by turning over 1,000 pages of printed matter. Otherwise, the opposition papers included the declaration of Barry Persofsky, vice-president of PFI. In our view, it is useful here to quote portions of that declaration. With reference to REQUEST FOR PRODUCTION OF DOCUMENTS No. 5, Mr. Persofsky declared:

"That such a production would involve the hand-sorting and manual evaluation of over 13,000 claims files now open and an undetermined number in existence since 1/1/1979, to determine which are property damage cases, as no identifying marks are placed on the outside.

"That, assuming evaluation of each individual file would take approximately five (5) minutes; and a lower estimate of 13,000 files, the sorting task would take 1,083.33 man-hours. PFI has five (5) claims adjusters which if used full-time for this task, would take 216.67 man-hours each to complete sorting and evaluation; or 5.42 work-weeks each. Each additional minute over five (5) minutes, average, each file takes to review adds 216.67 man-hours to the task.

"Such a task would effectively shut down PFI for the duration of the task, or cost thousands of dollars to hire personnel to perform, at an additional time cost for training.

"The information requested can be obtained through no other means than said manual evaluation."

As a result of the motion, respondent court ordered compliance with request No. 5 as already recited and afforded Mead 180 days within which to comply.

This led to defendants' petition. We issued the order to show cause, and the matter is now before us for disposition.

DISCUSSION

Before proceeding with an actual discussion of the issues, we must observe that in the "Statement of Facts" recited in City's answer to the petition, considerable emphasis is placed on the details of what it perceives to be unreasonable and delaying tactics employed by defendants to thwart City's discovery efforts. The implication of City's arguments in support of the order arising from this emphasis on such tactics is that somehow, even if the discovery order be burdensome, Mead has it coming. More particu-

larly, City states, "In light of . . . Mead's long and consistent history of noncooperation and evasion, the City submits that [the trial judge's] Order Compelling Mead to Comply with Request for Production Number 5 is a reasonable exercise of the trial court's discretion. . . ."

At this point, with reference to the foregoing, we are constrained to observe that City had and may yet have appropriate remedies available, e.g. Code of Civil Procedure section 128.5, to redress any grievance it perceives arising from the tactics of which it complains. However, such tactics, even if they occurred, are irrelevant to the criteria which determine the propriety of the order here under review.

Turning to the merits, as earlier recited, in its response to request No. 5, tendered by Mead to City before issuance of the order here challenged, Mead stated, in part, ". . . this request is not reasonably calculated to lead to discovery [of] admissible evidence. . . ." This language of the response of course reflected that portion of section 2031, subdivision (a) of the Code of Civil Procedure which allows a litigant to seek production of documents which "are relevant to the subject matter of the action, or are reasonably calculated to [lead to the discovery of] admissible evidence. . . ."

We observe with interest, if not incredulity, that Mead, in its petition here has raised no objection to the order on grounds that there was no showing of relevancy by City in the trial court. Conceding to the trial court's order the presumptions of validity to which it is entitled where the record is silent, we can only assume that the issue of relevancy of whatever may be in these hundreds or perhaps thousands of claim files to be produced, if such issue was raised at all in the trial court, was resolved in favor of City.

Even so, we feel compelled to cite the parties to our recent case of *Nelson* v. *Superior Court* (1986) 184 Cal.App.3d 444 [229 Cal.Rptr. 94], a case which also presented for review in an original proceeding the propriety of the trial court's order which *denied* a motion to compel where the object of discovery was very similar to what has been sought in the case here. One of the reasons why we upheld the trial court's order was that the moving plaintiff had "made no showing whatever that the request for production of the accident investigation reports were reasonably calculated to lead to discovery of admissible evidence." (*Id.,* at p. 450.)

In elaborating upon that reason for the decision, we said, "Subdivision (b) of section 2031 of the Code of Civil Procedure provides that if a party objects to a request to produce documents or things, the requesting party 'may move for an order for compliance under subdivision (a) of Section 2034.' Subdivision (a) of section 2034 in turn authorizes an order compel-

ling production of the book, document or thing only 'if good cause is shown.'

"Code of Civil Procedure section 2036 provides: '(a) A party required to show "good cause" to obtain discovery under any provisions of Chapter 2 (commencing with Section 1985) or of Article 3 (commencing with Section 2016) of Chapter 3 of this title shall show specific facts justifying discovery and that the matter is relevant to the subject matter of the action or reasonably calculated to lead to the discovery of admissible evidence. [¶] (b) The showing set forth in subdivision (a) of this section and any showing made in opposition thereto shall be made in the trial court prior to that court's determination of the matter.' " (*Id.,* at p. 451.)

■ Continuing, "Civil discovery, unlike discovery in criminal cases, is governed by statute (see *State of California* ex rel. *Dept. of Transportation* v. *Superior Court (Hall), supra,* 37 Cal.3d 847, 852 [210 Cal. Rptr. 219, 693 P.2d 804]; *Pitchess* v. *Superior Court, supra,* 11 Cal.3d 531, 535 [113 Cal.Rptr. 897, 522 P.2d 305]), and a showing of good cause is statutorily required to compel production in civil cases even with respect to nonconfidential matter. (Code Civ. Proc., §§ 2031, subd. (b), 2034, subd. (a), 2036.) Here, despite having been supplied the TASAS data, plaintiff made no showing whatever of any use for the reports other than his speculation that after examining the reports he might be able to formulate some viable theory of liability on the part of the state. There was no showing whatever that any of the other accidents was even remotely the same factually as plaintiff's. Plaintiff's purpose in requesting the reports, so far as was shown was precisely the type of 'fishing expedition' not authorized even when the requesting party is charged with crime on account of a vehicular accident. Without a showing the other accidents were or might have been even remotely similar in nature to his own, plaintiff failed to show his request was reasonably calculated to discover admissible evidence." (*Nelson* v. *Superior Court, supra,* 184 Cal.App.3d 444, 452-453.)

■ Turning to the first contention raised by Mead, namely that the order was oppressive, we agree.

Mr. Persofsky's declaration stands uncontroverted, and so we must deal with this issue on the assumption that his declaration fairly states the facts in terms of what would have to be done by defendants to comply with the court's order.

As observed in *West Pico Furniture Co.* v. *Superior Court* (1961) 56 Cal.2d 407 [15 Cal. Rptr. 119, 364 P.2d 295], " [o]ppression must not be equated with burden [all discovery imposes some burden on the opposi-

tion]. . . . to support an objection of oppression there must be some showing . . . that the ultimate effect of the burden is incommensurate with the result sought." (*Id.,* at p. 417.) In *West Pico* the trial court had denied a motion to compel the production of documentary information which would have required a search of the records in 78-branch offices of Pacific Finance. The writ petitioned for by West Pico Furniture Co. was granted because Pacific Finance had not made a factual showing to the trial court of the nature and extent of the trouble and expense which would have been entailed in responding to the request for discovery. The relief granted was to direct the trial court to vacate its order denying the discovery sought and to reconsider the matter in light of the court's power under section 2019, subdivision (b)(1) of the Code of Civil Procedure, to condition discovery on such terms as appear just and reasonable, including the allocation of the expense thereof.

Applying the *West Pico* rationale, and in view of the specific details of what would face Mead in its efforts to comply with the order, there is no question but what was ordered here, without more, falls on the side of oppression. In other words, Mead did make a showing to the trial court of the massive extent of the burden which the request entailed, and the order made no provision at all to mitigate that burden.

■ Turning to defendants' second basis for challenging the discovery order, they are correct in arguing that it failed to address the impact on the case of section 791.13 of the Insurance Code. That section prohibits an insurance company or its agents from disclosing "any personal or privileged information about an individual collected or received in connection with an insurance transaction unless the disclosure is [¶] (a) [w]ith the written authorization of the individual . . . . [¶] [o]btained one year or less prior to the date a disclosure is sought . . . ."

This brings the discussion to *Colonial Life,* referred to at the outset. In that case, where only 35 claim files were the subject of discovery, the trial court devised a procedure to deal with the privilege issue. This procedure was first to limit disclosure to names and addresses only of persons falling within the permissible scope of discovery and then to approve the form and content of a letter to be sent by plaintiff's counsel to all those persons, requesting their consent to release of their claim file information by the insurance company. (*Colonial Life & Accident Ins. Co.* v. *Superior Court, supra,* 31 Cal.3d 785, fn. 10 at pp. 792-793.)

Accordingly, the trial court in the case here could have properly required Mead to disclose to City the names and addresses of all the other claimants

whose claim files were opened since January 1, 1979,[3] on condition that City first compose a letter, subject to approval by the court, to be sent to each of these claimants seeking permission for Mead to disclose the data in the respective files. Thereafter, under the terms of the statute, only the claim files of those addressees returning their written and dated consents within one year of the solicitation could be opened by Mead for inspection by City.

Because the disclosure of merely the name and address of a person who has made a claim in some sort of casualty context could lead to abuses, it would be appropriate, in our view, for the order in this section 719.13 circumstance expressly to limit the nature and extent of the contact with a claimant exclusively to the court-approved letter noted.

To comply with the requirements of such order as we are here evolving, Mead will be required to engage in only a limited evaluation of what names to disclose. Specifically, all it would be required to do is disclose to City the names and addresses of all claimants for whom claim files, referable to Mead's public entity insureds, were opened in any of PFI's California offices after January 1, 1979.

At the end of one year from the date the letters are sent, Mead will be authorized to open the files of those claimants who have consented to it. It will then be up to City to send its representatives to wherever those claim files are located and there to engage in whatever evaluation they deem suitable to their discovery objectives. To countenance anything otherwise would be to impose the oppressive burden upon defendants of formulating a case against themselves, a requirement which goes far beyond the bounds of our adversary system of justice. In this connection, it goes almost without saying that any attorney work product in the claim files made available to City for scrutiny can first be removed.

The disposition which follows prescribes a procedure which first addresses the privilege problem and then resolves the "oppression" issue by placing the burden on City actually to perform the evaluation task implicit in its request.

### DISPOSITION

The petition is granted. Let a peremptory writ of mandate issue directing respondent court in Riverside Superior Court No. 177527 to vacate para-

---

[3]At oral argument counsel for City stated unequivocally that his client would be well satisfied with the names and addresses of claimants in California only.

graph 2 of its minute order of May 27, 1986, and to enter a modified paragraph 2 to read as follows:

"2. The motion to produce documents as set forth in Request 4 is granted. In regard to Request #4, the reinsurance files are limited to those relating to Defendant Mead's reinsurance of the risk involved. The court strikes the words 'in any way' on Request #4. The motion to produce documents as set forth in Request 5 is granted on a limited basis in that all that defendants are required to produce in the first instance are the names and addresses of all claimants for whom defendants opened claim files in California after January 1, 1979, referable to defendant Mead's public entity insureds. Thereafter, plaintiff shall be empowered to prepare a letter, the form of which shall be approved by the court, upon notice to defendants, to be sent to all such claimants, the same soliciting authorization for defendants to disclose the contents of said claim files as contemplated by section 791.13 of the Insurance Code. After the elapse of one year from the date of said letter of solicitation or such shorter period as plaintiff shall elect, the defendants shall be required to make available to plaintiff only those files as to which, by means of a dated and signed writing, the claimants have consented to disclosure of the contents thereof, less privileged attorney work product, and to make them available for inspection and copying only at those offices where such claim files are located." With further reference to section 791.13 of the Insurance Code and the required compliance with the spirit as well as the letter of that section implicit in this order, there shall be no contacts of any kind with or disclosure to outside parties of the identity or address of any claimant whose name and address is disclosed to plaintiff other than by the letter herein prescribed, unless and until that claimant, by a signed and dated writing, has consented to disclosure in accordance with section 791.13 and the foregoing provisions of this order. The alternative writ is discharged, and petitioners shall be entitled to their costs per section 1027 of the Code of Civil Procedure.

Kaufman, Acting P. J., and Rickles, J., concurred.