JAMES LEESON et al., Plaintiffs-Appellees, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant.

First District (6th Division)   No. 1—88—2046

Opinion filed November 1, 1989.

Taylor, Miller, Sprowl, Hoffnagle & Merletti, of Chicago (Frank C. Stevens, and Eugene P. Griffin, of counsel), for appellant.

Biswurm & Myers, Ltd., of Chicago (Robert J. Biswurm and Kirt D. Hyzy, of counsel), for appellees.

JUSTICE QUINLAN delivered the opinion of the court:

Defendant, State Farm Mutual Automobile Insurance Company (State Farm), appeals a default judgment entered by the circuit court of Cook County which was entered as a discovery sanction. In its appeal, the defendant contends that the circuit court erroneously entered the default judgment because the discovery requests made by the plaintiffs were oppressive, were not relevant or material, and requested privileged information.

On October 11, 1985, James Leeson and Antoinette Heisman, the plaintiffs, were involved in an automobile accident when their vehicle was struck by a hit-and-run driver. As a result of the accident, Leeson was hospitalized at Thorek Hospital and Medical Center (Thorek) from October 12 to October 22, 1985, and Heisman was hospitalized at Thorek from October 12 to October 30, 1985. The plaintiffs, at the time of the accident, had maintained an automobile insurance policy with the defendant, State Farm. Plaintiffs' policy provided coverage for medical expenses, specifically stating, "[State Farm] will pay reasonable medical expenses, for bodily injury caused by accident *** [including] expenses *** for necessary medical, surgical, x-ray, dental, ambulance, hospital, professional nursing and funeral services, eyeglasses, hearing aids and prosthetic devices." On November 19, 1985, pursuant to this automobile policy, Leeson submitted a claim for $9,290.50 in medical expenses arising from the hit-and-run accident and Heisman submitted a claim for $12,954.50 in medical expenses.

Thereafter, plaintiffs periodically telephoned defendant's Des Plaines office to determine whether defendant intended to pay their claims and, receiving no response, plaintiffs retained an attorney in March 1986. Plaintiffs' attorney was informed that the defendant had not yet decided whether to pay those claims. Thereafter, on March 13, 1986, plaintiffs filed a two-count complaint at law against defendant. In count I, plaintiffs sought $22,245 plus costs, claiming that defendant had wrongfully breached its contract of automobile insurance with plaintiffs. In count II, plaintiffs sought $25,000 plus costs and attorney fees, alleging that defendant had unreasonably and vexatiously delayed in settling their claim in violation of the Illinois Insurance Code (Ill. Rev. Stat. 1987, ch. 73, par. 613 et seq.). Defendant filed an answer denying that plaintiffs' medical treatments were covered under its automobile insurance policies because, it contended, the plaintiffs' expenses were not reasonable or necessary.

After defendant had obtained plaintiffs' medical records from the hit-and-run accident, it sent the records to INSPE Associates

(INSPE), a corporation consisting of physicians who review medical records on behalf of insurance companies. INSPE was asked to determine whether the medical treatment claimed by plaintiffs as medical expenses were reasonable and necessary. Dr. Daniel Samo, a partner in INSPE, reviewed plaintiffs' records and, on April 21, 1986, advised defendant that in his opinion certain expenses claimed by plaintiffs were inappropriate, excessive, unnecessary and unreasonable. Based on Dr. Samo's advice, defendant then refused to pay plaintiffs the full amounts they had submitted as medical expenses.

Plaintiffs subsequently filed interrogatories and a request for production of documents on July 2, 1986. On July 24, 1986, defendant filed objections to plaintiffs' interrogatories 4(a) through 4(g) and 4(l) through 4(r), claiming that those interrogatories were irrelevant and immaterial to the issues in the case. Those particular interrogatories requested information concerning all independent medical examinations conducted by defendant on claims for automobile medical payment benefits submitted to defendant's Des Plaines office between January 1, 1985, to December 31, 1985.[1] Defendant also objected to

---

[1]Specifically, these interrogatories requested:

(a) the total number of claims for medical payments processed through the Des Plaines office;

(b) the number of claims processed through the Des Plaines office where an independent medical examination was conducted;

(c) through (e) the number of claims in which an independent medical examination was conducted and the full amount of the claim or the available benefits were paid, no benefits were paid, or partial benefits were paid;

(f) the claims where an independent examination was conducted, the number of lawsuits filed against the defendant for recovery of medical benefits;

(g) the name, address and telephone number of all doctors used by the Des Plaines office to conduct the independent medical examinations;

(l) the minimum education, training and experience required of those conducting the independent medical examinations;

(m) and (n) whether independent medical examinations are routinely conducted on all claims for medical expenses and, if so, at what time after the claim was submitted was the examination undertaken;

(o) if independent medical examinations are not routinely conducted, the name, address, telephone number, employer, department, occupation and job title of those responsible for determining which claims require an independent medical examination;

(p) if it is determined that an independent medical examination is required, how long after the claim is submitted is the exam conducted;

(q) the minimum dollar value of a claim that will have an independent medical examination conducted; and

(r) the maximum dollar value of a claim for benefits that will not have an independent medical examination conducted.

portions of plaintiffs' request for production, claiming that certain items sought by plaintiffs were irrelevant and immaterial. On July 25, 1986, defendant filed its answers to plaintiffs' interrogatories; however, defendant again refused to answer interrogatories 4(a) through 4(g) and 4(l) through 4(r).

On September 16, 1986, plaintiffs then filed a motion to compel discovery pursuant to Illinois Supreme Court Rules 201, 213, and 214, alleging that defendant had failed to comply with the rules by not completely answering plaintiffs' interrogatories and by not completely responding to plaintiffs' request for production. (107 Ill. 2d Rules 201, 213, 214.) Plaintiffs asserted that the information sought in their interrogatories was material and relevant to count II of their complaint, where they had alleged that defendant vexatiously and unreasonably delayed in paying their claim. Defendant asked that the motion be denied.

A hearing on plaintiffs' motion to compel was held on May 15, 1987. At that hearing, plaintiffs argued that their interrogatories were relevant and material in determining whether defendant unreasonably and arbitrarily used independent medical examinations[2] in order to delay timely payment of claims. Plaintiffs also claimed that their interrogatories sought to determine what was "reasonable and necessary" according to the terms of the insurance policy issued by the defendant, as well as what criteria were used to determine whether a claim should be subjected to an independent medical examination. In response, defendant argued that the interrogatories were burdensome and would likely involve "hundreds" of claims. Defendant further contended that the information sought was irrelevant because the present case concerned only two policy holders and one accident and, therefore, information about all other claims would be helpful in determining whether the defendant acted arbitrarily and unreasonably with regard to this claim. Consequently, on May 21, 1987, the circuit court entered its order granting plaintiffs' motion to compel answers to their interrogatories 4(a) through 4(g) and 4(l) through 4(q). Interrogatory 4(r) was stricken by the court as redundant.

On May 22, 1987, plaintiffs served a subpoena *duces tecum* on INSPE, commanding INSPE to produce "[p]hotocopies of any and all reports or Independent Medical Examinations, on Defendant's insureds' medical records performed, received, prepared or referred be-

---

[2]At this hearing, the parties agreed that the term "independent medical examination" included an examination simply of the claimant's records by INSPE.

tween May 22, 1985 and May 22, 1987." On June 17, 1987, defendant filed a motion to quash the subpoena *duces tecum*, again claiming that those documents which had been requested were also irrelevant and immaterial, were work product and/or subject to the attorney-client privilege. Defendant also filed, on June 22, 1987, a motion for rehearing of the circuit court's May 21, 1987, order granting plaintiffs' motion to compel discovery. In its motion for rehearing, defendant claimed that in order to comply with plaintiffs' interrogatories, it would need to process at least 2,000 to 2,500 claim files, which would involve hundreds of hours of work.

Pursuant to plaintiffs' motion to compel, defendant filed its answers to plaintiffs' interrogatories on September 30, 1987. In its response, defendant said that 2,124 claims for medical benefit payments were processed through its Des Plaines office in the year 1985, and specifically in answer to interrogatories 4(b) through 4(g), defendant stated that the information was unknown and unavailable statistically.

Next, plaintiffs filed a motion for sanctions and asked that a default be entered against the defendant for failing to comply with plaintiffs' discovery requests. Subsequently, on January 29, 1988, the court held a hearing on the various motions filed by the parties. At this hearing, defendant, over plaintiffs' objections, presented the affidavit of Dr. Samo. In that affidavit, Samo stated that compliance with plaintiffs' subpoena *duces tecum* would require INSPE to examine as many as 1,100 files and would cause "massive business disruption and substantial expense." Defendant also presented Keith Katsma, a State Farm claim representative, to answer questions. The trial court allowed Mr. Katsma to answer questions after plaintiffs stated that they had no objections to Mr. Katsma responding to questions.

Katsma said that in the year 1985, defendant was presented with approximately 2,100 medical payment claims at State Farm's Des Plaines office, but defendant did not know which 2,100 claims out of all the claims that defendant received that year were for medical benefit payments. Katsma explained that defendant would need a computer specialist to write and run a computer program to find the 2,100 medical benefit payment claims, a task that would take two to three days. Defendant would then, it said, need a claims handler to examine each of the 2,100 files in order to answer plaintiffs' interrogatories. Defendant estimated that this examination would take approximately 500 hours, or 15 minutes per file. Plaintiffs declined to cross-examine Katsma, on the asserted basis that this proceeding

was not an evidentiary hearing. Nevertheless, the court denied defendant's motion to quash. Defendant also asserted that privilege prevented disclosure, citing, for the first time, the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1003(e)) and the Illinois Insurance Code (Ill. Rev. Stat. 1987, ch. 73, par. 755.10a) which, it claimed, also prevented disclosure. The court held that those statutes did not apply in this case and also denied defendant's motion for rehearing and plaintiffs' motion for sanctions.

On May 26, 1988, a hearing was held on plaintiffs' motion for default. Following the hearing, the circuit court struck defendant's answer to plaintiffs' complaint and entered a default order against the defendant. The court held that there was a contumacious refusal on the part of the defendant to comply with the court's orders, but the court reserved the ruling on the issue of attorney fees. The court then entered an order finding that its order of default was final and appealable, and this appeal followed.

Defendant raises three issues on appeal. Initially, defendant contends that the material requested was immaterial and irrelevant, the discovery request was oppressive, and the material was protected from discovery by the Illinois Code of Civil Procedure and the Illinois Insurance Code (see Ill. Rev. Stat. 1987, ch. 110, par. 2—1003(e); Ill. Rev. Stat. 1987, ch. 73, par. 755.10a), and that the trial court erroneously held that these statutes did not apply.

We will first address the defendant's contention that the trial court abused its discretion in entering a default judgment here because the discovery requested by plaintiffs was not relevant or material. Defendant argues that plaintiffs' complaint addressed only the plaintiffs' individual claims and that defendant's handling of any other claims was completely irrelevant to the case at hand. Disagreeing, plaintiffs argue that defendant's handling of other claims was relevant and material to their contention that the defendant breached its contract of insurance with them and vexatiously and unreasonably delayed paying their claims.

■ ■ The rules regarding discovery were enacted in order to enable attorneys to effectively prepare, evaluate and present their cases. (*King v. American Food Equipment Co.* (1987), 160 Ill. App. 3d 898, 910, 513 N.E.2d 958, 966.) The objectives of discovery are to enhance the truth-seeking process. (*King*, 160 Ill. App. 3d at 910, 513 N.E.2d at 966.) Accordingly, great latitude is allowed in the scope of discovery, and the concept of relevance for discovery purposes is broader than the concept of relevance for purposes of the admission of evidence at trial. (*Pemberton v. Tieman* (1983), 117 Ill.

App. 3d 502, 504-05, 453 N.E.2d 802, 804.) Therefore, relevance for discovery purposes includes not only what is admissible at trial, but also that which leads to what is admissible. (*Pemberton*, 117 Ill. App. 3d at 504-05, 453 N.E.2d at 804.) However, the right to discovery is limited to disclosure of matters that will be relevant to the case at hand in order to protect against abuses and unfairness, and a court should deny a discovery request where there is insufficient evidence that the requested discovery is relevant or will lead to such evidence. (*Mistler v. Mancini* (1982), 111 Ill. App. 3d 228, 232, 443 N.E.2d 1125, 1128.) The rules governing discovery give great discretion to the trial court, and its exercise of discretion will not be disturbed on appeal absent an abuse of discretion. *Pemberton*, 117 Ill. App. 3d at 505, 453 N.E.2d at 804.

■ Here, however, we find that despite the broad concept of relevancy for discovery purposes, the trial court abused its discretion in ruling that the discovery sought by plaintiffs was relevant and material. The central issue in this case was whether the medical expenses claimed by plaintiffs were reasonable and necessary. Hence, whether the defendant unreasonably and vexatiously refused to pay these benefits, then, hinges on whether these specific medical expenses themselves were reasonable. Accordingly, we cannot see how the information sought concerning the 2,100 other unrelated medical claims submitted to defendant's Des Plaines office was at all material and relevant to the issue at hand.

Defendant also contends in its appeal that the trial court erroneously entered a sanction of default against it because the materials requested by plaintiffs were oppressive. Defendant's argument that the discovery was oppressive is based on Katsma's statement that defendant would need a computer specialist to create a computer program in order to locate the files, that it would then have to ship the files from Bloomington, Illinois, to Golf Mill, Illinois, that it would require approximately 500 hours for a claims analyst to review the files, and that based on Dr. Samo's estimate, it would take approximately 40 hours and at least $2,000 to $3,000 to merely photocopy documents in order to comply with the subpoena *duces tecum*.

In response, plaintiffs deny that their discovery request was oppressive. Plaintiffs contend that defendant failed to submit any proper evidence in support of its claim that the discovery was oppressive. Plaintiffs argue that Dr. Samo's affidavit cannot properly be considered in support of defendant's claim of oppressiveness because that affidavit pertained to the subpoena *duces tecum*, not to the interrogatories. Similarly, plaintiffs argue that Katsma's state-

ments cannot be considered because those statements were not made at an evidentiary hearing.[3] Finally, plaintiffs maintain that their discovery requests were not, in any event, oppressive.

In arguing the issue of oppressiveness, both parties discuss *People ex rel. General Motors Corp. v. Bua* (1967), 37 Ill. 2d 180, 226 N.E.2d 6, and *Mead Reinsurance Co. v. Superior Court* (1986), 188 Cal. App. 3d 313, 232 Cal. Rptr. 752. In *Bua*, the Illinois Supreme Court stated that a trial court must carefully exercise its discretion in matters pertaining to discovery "in order to balance the needs of truth and excessive burden to the litigants." (*Bua*, 37 Ill. 2d at 193, 226 N.E.2d at 14.) There, the court held that an order requiring production of all records relating to "model years of the Corvair 1960 through 1965" was an abuse of discretion because the accident upon which the plaintiffs' complaint was based involved a 1961 Corvair. (*Bua*, 37 Ill. 2d at 193-94, 226 N.E.2d at 14.) Defendant contends that the *Bua* case supports its argument that the plaintiffs' discovery request here for all the medical benefit claims submitted to defendant's Des Plaines office in 1985 was oppressive. Plaintiffs, on the other hand, distinguish *Bua*, noting that the plaintiffs in *Bua* sought records for five years, while they sought records for only one year.

In *Mead*, the insurer challenged the trial court's order compelling discovery of all of its claim files, similar to the claim at issue in this case, from 1979 through 1985, contending that the discovery request was oppressive. (*Mead*, 188 Cal. App. 3d at 315, 232 Cal. Rptr. at 752.) The California Court of Appeals agreed, noting that compliance with the discovery request would require the insurer to transport its files from New York to California, and would also require five full-time adjusters to manually evaluate at least 13,000 files, a task that would take each adjuster approximately 5½ weeks. *Mead*, 188 Cal. App. 3d at 318, 232 Cal. Rptr. at 754.

Defendant, State Farm, argues that *Mead* is applicable to this case and that the excessive burden placed on the defendant here in complying with the discovery outweighs the needs for truth. Plaintiffs distinguish *Mead* from this case because they contend that the insurer there presented detailed information in support of its claim of oppressiveness, while the defendant here failed to provide any specific evidence.

---

[3]Despite plaintiffs' claim that Katsma's statements were inadmissible because they were not made at an evidentiary hearing, we note that plaintiffs never objected to Katsma's statements. Accordingly, we find that plaintiffs cannot now object to Katsma's testimony as being considered as evidence.

■ A trial court has broad discretion in determining what sanctions to impose, and a court's exercise of that discretion will not be disturbed absent an abuse of discretion. (*Peoples Gas, Light & Coke Co. v. Chicago Black Improvement Association* (1986), 148 Ill. App. 3d 1093, 1096, 502 N.E.2d 8, 10.) Courts consider the striking of a party's pleadings to be the most severe sanction, and thus, that sanction is only proper when a party's actions show a deliberate, contumacious or unwarranted disregard for the court's authority. (*Peoples Gas*, 148 Ill. App. 3d at 1096, 502 N.E.2d at 10.) Once a court imposes a sanction on a party for refusing to comply with discovery, however, the sanctioned party has the burden of showing that the noncompliance was reasonable or justified. *Kubian v. Labinsky* (1988), 178 Ill. App. 3d 191, 196, 533 N.E.2d 22, 26.

■ We believe that the defendant has sustained its burden of showing that its noncompliance with the trial court's discovery order was justified on the grounds of oppressiveness. Balancing the "needs of truth and excessive burden to the litigants" (*Bua*, 37 Ill. 2d at 193, 226 N.E.2d at 14), we find that the trial court abused its discretion in ruling that the discovery requested was not oppressive. Compliance with the discovery would require the defendant to create a computer program to find the medical records, and then would require at least 15 minutes for an insurance analyst to look through each one of the records in order to answer the plaintiff's interrogatories. Absent some preliminary showing of materiality and relevancy, we believe that the facts here are similar to those in *Bua* and *Mead*, and that the time, money and effort required in order to comply would be oppressive. The trial court, therefore, abused its discretion in ordering the defendant to comply with plaintiffs' discovery and in entering a sanction of default for defendant's failure to comply.

Inasmuch as we have held that the trial court erroneously ordered the defendant to comply with plaintiffs' discovery and erroneously entered a sanction of default, we need not and do not address defendant's claim that the discovery requested by plaintiffs was privileged under the Illinois Code of Civil Procedure and the Illinois Insurance Code.

Accordingly, for all of the foregoing reasons, we reverse the trial court's default judgment and remand this case for further proceedings consistent with this opinion.

Reversed and remanded.

EGAN, P.J., and LaPORTA, J., concur.