Kerry Lynn COOK, Joan Lillian Smith and Brenda Stewart, Plaintiffs,

v.

YELLOW FREIGHT SYSTEM, INC., Defendant.

No. CIV–S–89–0088 MLS–GGH.

United States District Court, E.D. California.

Sept. 5, 1990.

Amy Oppenheimer, Levy & Oppenheimer, Oakland, Cal., for defendant.

Jeffrey Rosas, Law Offices of Kathryn Dickson, San Francisco, Cal., for plaintiffs.

## ORDER

GREGORY G. HOLLOWS, United States Magistrate.

Previously pending on this court's law and motion calendar for August 24, 1990, was plaintiffs' motion to compel discovery. The parties to the action properly submitted a stipulation pursuant to E.D.Cal.R. 251. After reviewing the stipulation, considering the record, and hearing oral argument from respective counsel, the court issued its tentative order from the bench. The court now issues the following written order for the purpose of clarifying the record and further explaining the reasoning behind its decision.

Background

Plaintiffs filed the underlying complaint against Yellow Freight System, Inc. on January 23, 1989. Pursuant to the leave of court granted May 19, 1989, plaintiffs filed a first amended and supplemental complaint on June 2, 1989. Therein, plaintiffs allege sexual harassment in violation of both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the California Fair Employment and Housing Act (FEHA), Cal.Govt.Code § 12940(a) & (h).

The record before the court reveals that plaintiffs Kerry Lynn Cook, Joan Lillian Smith, and Brenda Stewart were formerly employed by Yellow Freight System, Inc. (Yellow Freight) at its Manteca terminal in Stockton, California. Each of the plaintiffs alleges that she was subjected to numerous incidents of sexual harassment while under the supervision of two Yellow Freight employees, Darrel Fawcett and Steve Brown. Plaintiffs allege that Darrel Fawcett also engaged in sexual harassment against other Yellow Freight employees prior to the employment of the present plaintiffs, "that defendant Yellow Freight knew or should have known of Fawcett's prior conduct; and that defendant was therefore negligent in retaining Fawcett."

Plaintiffs allege that after defendant Yellow Freight investigated the allegations of sexual harassment, supervisor Darrel Fawcett was given the option of being transferred to another location within the company. When he refused, he was either fired or resigned. Defendant Yellow Freight has asserted that its quick action against Fawcett is evidence of an appropriate response to the problem.

Upon his leaving Yellow Freight, Darrel Fawcett apparently threatened to file his

own lawsuit against Yellow Freight. Plaintiffs allege that Fawcett then corresponded with Yellow Freight through his attorney in an attempt to settle the matter.

On August 1, 1990, plaintiffs noticed the present motion to compel discovery. On August 21, 1990, the parties submitted a stipulation regarding the present motion pursuant to E.D.Cal.R. 251. Therein, the plaintiffs reveal that they are seeking to compel answers to interrogatory numbers 10 and 11, wherein plaintiffs are requesting that the defendant provide the last known addresses and phone numbers of female employees who worked with Fawcett. Plaintiffs are also seeking an order compelling the defendant to produce the documents requested in plaintiffs' Request No. 31, which seeks the written communication between Fawcett and defendant regarding Fawcett's termination.

The defendant has objected to the interrogatories and request on the ground that they constitute an unwarranted invasion of the constitutional and personal privacy rights of individuals who are not parties to this action.

Discussion

At the outset, the court notes that "in federal question cases the clear weight of authority and logic supports reference to federal law on the issue of the existence and scope of an asserted privilege." *Heathman v. United States District Court,* 503 F.2d 1032, 1034 (9th Cir.1974); *Kerr v. U.S. Dist. Court for Northern Dist. of California,* 511 F.2d 192 (9th Cir. 1975), *aff'd,* 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725. Nonetheless, "as a matter of comity, federal courts should attempt to ascertain what interests inspire relevant state doctrine and should take into account the views of state authorities about the importance of those interests." *Kelly v.*

*City of San Jose,* 114 F.R.D. 653, 656 (N.D. Cal.1987).

A.   Interrogatory Nos. 10 and 11.

Interrogatory numbers 10 and 11 request that the defendant provide the names and last known addresses and phone numbers of each female office employee who worked in defendant's Los Angeles and/or Manteca terminal any time during the time Darrel Fawcett was employed there.

Defendant responds by stating that the interrogatories are overly broad and burdensome and that the plaintiff is seeking "information which would constitute an unwarranted invasion of the constitutional and personal privacy rights of individuals who are not parties to this action."

While the federal courts have not fully developed a right of privacy in litigation, there is an embryonic movement in that direction. In *Breed v. U.S. Dist. Court for Northern Dist. of California,* 542 F.2d 1114 (9th Cir.1976), the Ninth Circuit was asked to reverse a three-judge district court order which compelled the discovery of the California Youth Authority's personnel and inmate files. Although the court ultimately denied the petition for a writ of mandamus, the court stated that it was "troubled by that portion of the district court's order which permits disclosure of the identities of persons who are or were in the custody of the Youth Authority," *Id.* at 1115, and spoke of the need to balance "the invasion of these minor's right of privacy against the plaintiff's need for this information as found by the district court. . . ." *Id.* at 1116. Moreover, in *Tavoulareas v. Washington Post Co.,* 724 F.2d 1010 (D.C. Cir.1984), *vacated on other grounds,* 737 F.2d 1170 (D.C.Cir.1984) (*en banc*),[1] the court addressed the Supreme Court's decisions in *Whalen v. Roe,* 429 U.S. 589, 97

---

1. In *Tavoulareas v. Washington Post Co.,* 737 F.2d 1170, an *en banc* panel vacated the appellate court's prior ruling for the purpose of remanding the action to the district court for a "good cause" determination under Fed.R.Civ.P. 26(c) pursuant to the reasoning of *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). The *en banc* decision, however, does not diminish the relevance of the original appellate court's language regarding an individual's privacy interest in the discovery context and its ultimate effect on the court's finding of good cause under Rule 26(c). *See Tavoulareas v. Washington Post Co.,* 737 F.2d at 1172 ("The First Amendment religious privacy interests at issue might have constituted good cause to issue the protective order.")

S.Ct. 869, 51 L.Ed.2d 64 (1977) and *Nixon v. Administrator of General Services*, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977), and noted that their significance lies "in their explicit recognition of the constitutional right to avoid disclosure of personal matters." *Tavoulareas*, 724 F.2d at 1021. The court also noted that "[i]n the discovery process, individuals are often forced by the court to disclose the kind of personal information deserving privacy protection under these decisions. An individual's constitutional privacy interest can thus be implicated by the discovery process to the same extent that it can be implicated by [other disclosure requirements]." *Id.; see also United States v. Hubbard*, 650 F.2d 293 (D.C.Cir.1980) (generally discussing the right to privacy during litigation).

On the other hand, California courts—as a result of the existence of a specifically enumerated right to privacy in Article I, Section I of the California Constitution—have addressed at length the issue of a right to privacy in the litigation context. *See Moskowitz v. Superior Court*, 137 Cal. App.3d 313, 187 Cal.Rptr. 4 (1982); *Binder v. Superior Court*, 196 Cal.App.3d 893, 242 Cal.Rptr. 231 (1987). In *Moskowitz*, the California Court of Appeals stated that

> [t]he constitutional right of privacy is not absolute; it may be abridged to accommodate a compelling public interest. One such interest, evidenced by California's broad discovery statutes, is the historically important state interest of facilitating the ascertainment of truth in connection with legal proceedings. When an individual's right of privacy in his financial affairs conflicts with the public need for discovery in litigation, the competing interests must be carefully balanced.

*Id.* 137 Cal.App.3d at 316, 187 Cal.Rptr. 4 (citations omitted); *see also Binder*, 196 Cal.App.3d. at 900, 242 Cal.Rptr. 231 (1987) ("[E]ven when discovery of private infor-

mation is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed; there must be a 'careful balancing' of the 'compelling public need' for discovery against the 'fundamental right of privacy.'" (citations omitted)).

■ While this court is of the view that such a balancing is appropriate, this court is also mindful of the fact that, by its very nature, litigation has the tendency to make public the sort of information that individuals would otherwise prefer to keep private. Public disclosure, in the end, is not only natural and generally unavoidable but also necessary and healthy to a process so dependant on accuracy and truth. Nonetheless, the initiation of a law suit does not, by itself, grant plaintiffs the right to rummage unnecessarily and unchecked through the private affairs of anyone they choose. A balance must be struck.

■ Thus, using the decision in *Moskowitz* as a "useful reverent," *see Breed*, 542 F.2d at 1115, the court will weigh the present defendant's concern with protecting the privacy interests associated with the names and addresses of its employees against the plaintiffs' interest in discovering such information for the purpose of presenting their case.[2]

■ Addressing the third-parties' rights to privacy first, the court notes that both federal and state courts have specifically held that individuals have a privacy interest in not having their names and addresses disclosed. *See Breed, supra*, 542 F.2d at 1116; *Heights Community Congress v. Veterans Administration*, 732 F.2d 526, 529–30 (6th Cir.1984), *cert. denied*, 469 U.S. 1034, 105 S.Ct. 506, 83 L.Ed.2d 398 (1984); *Wine Hobby, U.S.A. v. IRS*, 502 F.2d 133, 137 (3rd Cir.1974); *Davies v. Superior Court*, 36 Cal.3d 291, 204 Cal.Rptr. 154, 682 P.2d 349 (1984); *Denari v. Superior*

---

**2.** As for the issue of whether or not defendant Yellow Freight has standing to assert a privacy privilege that, in the end, seems to be more the concern of their former employees, the court finds in the affirmative. In *Craig v. Municipal Court*, 100 Cal.App.3d 69, 77, 161 Cal.Rptr. 19 (1979) the court stated that a custodian of private information "has the right, in fact the duty,

to resist attempts at unauthorized disclosure and the person who is the subject of the record is entitled to expect that his right will be thus asserted." Indeed, the court is of the view that an uncontested and unwarranted disclosure of such information may expose the party who releases such information without a court order to potential liability.

*Court,* 215 Cal.App.3d 1488, 264 Cal.Rptr. 261 (1989).

■ On the other hand, in addressing the plaintiffs' interest in obtaining such information, the court begins by noting that relevancy requirements with respect to discovery matters are to be broadly construed. *N.L.R.B. v. Local Union 497,* 795 F.2d 836, 838 (9th Cir.1986); *N.L.R.B. v. Leland Stanford Junior Univ.,* 715 F.2d 473, 474 (9th Cir.1983). Here, the plaintiffs are alleging that Fawcett had a history of sexually harassing women and that the defendant failed to respond appropriately. Clearly, obtaining the testimony of women who have worked for Fawcett in the past is highly relevant to the plaintiffs' case.

Having now considered the tension inherent in the competing interests, the court finds that any burden or irritation that may be caused by overruling the general privacy considerations associated with third-party names and addresses is outweighed by the importance of such discovery to the case.

Nonetheless, "even where the balance weighs in favor of disclosure of private information, the scope of disclosure will be narrowly circumscribed; such an invasion of the right to privacy must be drawn with narrow specificity and is permitted only to the extent necessary for a fair resolution of the lawsuit." *Moskowitz,* 137 Cal.App.3d at 316, 187 Cal.Rptr. 4 (citations omitted). As stated by the court in *Tavoulareas,* "all lawful privacy intrusions must be narrowly drawn and 'reasonably related in scope to the justification for their initiation....' " *Tavoulareas,* 724 F.2d at 1023 (quoting *Terry v. Ohio,* 392 U.S. 1, 29, 88 S.Ct. 1868,

1884, 20 L.Ed.2d 889 (1968)). Finally, under Federal Rule of Civil Procedure 26(c), the court has broad discretionary powers to fashion discovery in a manner that is suitable to the actions before it.

With that said, the court directs the following: *First,* the plaintiffs' counsel is to draft a letter, subject to the approval of the court, to be sent to all of those females who worked for Yellow Freight in Los Angeles and/or Manteca at the same time as did Darrel Fawcett for the purpose of requesting their consent to be contacted for this lawsuit. *Second,* the defendant is to then release the names and the addresses of those employees for the sole purpose of enabling the plaintiffs' counsel to mail the approved form letter. *Third,* further discovery of the employees and their files is subject to their individual consent and is to be used solely for the purpose of this lawsuit.[3]

**B. Request No. 31**

Plaintiffs are specifically requesting that the defendant produce:

> All documents that constitute, relate or refer to any claim, charge or demand made by Darrel Fawcett against defendant which relates in any way to any actions taken or proposed to be taken by defendant against Mr. Fawcett in connection with, or as a result of, allegations made by any of the plaintiffs against Mr. Fawcett or Mr. Brown. This request includes, but is not limited to, any internal or informal complaint or grievance, any written or oral demand (including any "position" taken by Fawcett or any

---

**3.** The court has adopted an approach that has been used by the California Courts in response to the confidentiality requirements of California Insurance Code section 791.13. *See Mead Reinsurance Co. v. Superior Court,* 188 Cal.App.3d 313, 232 Cal.Rptr. 752 (1986), and *Colonial Life & Accident Insurance Co. v. Superior Court,* 31 Cal.3d 785, 79–92, 183 Cal.Rptr. 810, 647 P.2d 86. The court in *Mead* stated

> This brings the discussion to *Colonial Life,* referred to at the outset. In that case, where only 35 claim files were the subject of discovery, the trial court devised a procedure to deal with the privilege issue. This procedure

was first to limit disclosure to names and addresses only of persons falling within the permissible scope of discovery and then to approve the form and content of a letter to be sent by plaintiff's counsel to all those persons, requesting their consent to release of their claim file information by the insurance company. *Id.* 31 Cal.3d at 792–793, 183 Cal.Rptr. 810, 647 P.2d 86.

In light of the privacy concerns associated with the names and addresses in general and the sensitive nature of the discovery and testimony that may be associated with this suit, the court is of the view that such an approach is appropriate in the present action as well.

"terms" proposed or demanded by Fawcett, as testified to by Mr. Fawcett at page 257 of his deposition), any administrative charge or complaint, any document filed or threatened to be filed with any court, and any documents relating to any settlement or proposed settlement of any claim, charge or demand made by Mr. Fawcett.

█ Plaintiffs argue that the documents at issue are relevant in that they are likely to contain information regarding the veracity of the plaintiffs' allegations.[4] Plaintiffs also assert that documents relating to the terms of a possible settlement would be directly related to a possible bias on the part of Fawcett in that they may disclose that Fawcett is being compensated by the defendant for his cooperation in the instant lawsuit. Moreover, plaintiffs contend that it would be unfair to allow the defendant to point to Fawcett's termination to support its claim that it has acted appropriately while shielding from view the details surrounding the termination.

Thus far, defendant has refused to produce such information, stating in its initial response that the request constitutes an unwarranted invasion of the "constitutional and privacy rights of individuals who are not parties to this action."[5] In its supplemental response, defendant states that to the extent that such documents exist, they pertain to ongoing settlement discussions between Fawcett's attorney and Yellow Freight and are thus subject to both the settlement privilege and the attorney-client privilege.[6] The defendant argues that such negotiations are by their nature subject to the expectation of privacy, and that such privacy considerations outweigh any possible relevance the documents might have. Moreover, defendant argues that, while an outright settlement may be relevant to bias, the mere content of settlement proposals are of little probative value.

Admittedly, the analysis regarding the right of privacy and the settlement privilege is somewhat overlapping. But discovery rulings relating to the balancing of privileges against relevancy are, by their nature, premised on myriad subtleties and concerns which frequently defy compartmentalization.

█ As for the defendant's assertions that such settlement discussions are protected by the right to privacy, the court agrees. While the discovery of documents drafted by those who assume that they will not be revealed to others is understandably tempting, the very existence of that temptation is dependant upon the drafters assumption that they will be private. It would be perverse logic to hold that the more private one expects discussions to be, the more releasable is the content of those discussions.

**4.** Plaintiffs' argument that the possible existence of statements by Yellow Freight to Fawcett that his transfer was not "harsh discipline" is ultimately unavailing. To the extent that the defendant is being sued for negligently employing Fawcett, triable issues will of course revolve around whether the defendant's actions were reasonable and effective, not whether they were "harsh and swift."

**5.** The court does not understand the defendant's objection to production as one which includes public documents such as formal grievances and complaints. Obviously, such documents are a matter of public record and are not subject to the privileges asserted by the defendant. As such, they must be produced.

**6.** The defendant has failed to address the assertion of the attorney-client privilege in its opposition to the plaintiff's motion, and the court hereby construes this failure as a belated recognition on the part of the defendant that the attorney-client privilege is not applicable here. As noted by the court in *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Ariz.*, 881 F.2d 1486 (9th Cir.1989), the attorney-client privilege applies

> (1) Where legal advice of any kind is sought; (2) from a professional legal advisor in his capacity as such; (3) the communication relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or by the legal advisor; (8) unless the protection be waived. *In re Fischel*, 557 F.2d 209, 211 (9th Cir.1977), *citing* 8 Wigmore Evidence § 2292 at 554 (McNaughton rev. 1961).

*Admiral Ins.*, 881 F.2d at 1492.

The documents at issue in the present matter are not those resulting from discussions between an attorney and his client but rather are documents relating to the action taken between the client's attorney and the client's former employer.

Nonetheless, the court need not premise its ruling regarding Request No. 31 on the asserted right to privacy alone. Indeed, there is a well established privilege relating to settlement discussions that the court finds applicable to this particular motion. Federal Rule of Evidence 408 states that:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.

Defendant states that Rule 408 "evidences a strong public policy favoring the confidentiality of attempts to voluntarily resolve disputes." *Citing McCormick on Evidence*, at 811 (3rd. ed. 1984). Indeed, the Ninth Circuit has stated that one of the principles underlying Rule 408 is the "promotion of public policy favoring the compromise and settlement of disputes." *United States v. Contra Costa County Water Dist.*, 678 F.2d 90, 92 (9th Cir.1982).

Thus, while it is true that Rule 408 is addressed to the inadmissibility of evidence at trial and generally pertinent to the inadmissibility of compromise material to prove damages or liability in the claim of origin, "the same consideration of policy which actuates the courts to exclude an offer of compromise made by [the defendant to the plaintiff], also apply to settlement [negotiations between the defendant and a third party.]" *McCormick on Evidence*, at 813.[7]

In this regard, the court finds that one consideration in precluding the discovery of documents generated in the course of settlement discussions lies in the fact that such discussions are frequently not the product of truth seeking. Settlement negotiations are typically punctuated with numerous instances of puffing and posturing since they are "motivated by a desire for peace rather than from a concession of the merits of the claim." *United States v. Contra Costa County Water Dist.*, 678 F.2d at 92. What is stated as fact on the record could very well not be the sort of evidence which the parties would otherwise actually contend to be wholly true. That is, the parties may assume disputed facts to be true for the unique purpose of settlement negotiations. The discovery of these sort of "facts" would be highly misleading if allowed to be used for purposes other than settlement. *See Wyatt v. Security Inn Food & Beverage, Inc.*, 819 F.2d 69, 71 (4th Cir.1987).

Moreover, as noted by the defendant, the fact that the documents requested pertain to settlement discussions and not to any finalized settlement belies the plaintiffs' assertion that the documents are relevant to the existence of bias on the part Fawcett as a possible key witness. If the defendant and Fawcett had come to terms, the plain-

---

**7.** In *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338 (9th Cir.1987), *cert. denied*, 484 U.S. 1047, 108 S.Ct. 785, 98 L.Ed.2d 870 (1988), the Ninth Circuit addressed the issue of whether "Settlement Agreement and General Release" which was offered to a terminated employee in exchange for an agreement by the employee to release all claims against his employer was inadmissible under Rule 408. The district court had admitted the document into evidence against the employer on the ground that it was drafted before the employee/plaintiff had filed his age discrimination complaint and, therefore, not excluded by Rule 408. The court held that the district court's admittance of the document into evidence was not an abuse of discretion, stating that "Where, as here, the employer tries to condition severance pay upon the release of potential claims, the policy behind Rule 408 does not come into play." *Id.* at 1343. The court continued by saying that "[s]uch communication may also tend to be coercive rather than conciliatory." *Id.*

The court finds that *Cassino* is inapposite to the case at bar. First, unlike *Cassino*, the discussions held between Fawcett and Yellow Freight were apparently initiated by Fawcett. Unlike the employer in *Cassino*, Yellow Freight cannot be found here to possess a "superior bargaining position" or to be "overreaching." Here, while there has apparently been no claim filed yet by Fawcett against Yellow Freight, the policy concerns behind Rule 408 are clearly applicable. Indeed, the negotiations here fall squarely within the sort of settlement discussion expressly found by the court in *Cassino* to be inadmissible, i.e. those made "in connection with the negotiation and settlement of disputes arising after the termination ... [where] the employee relinquishes the right to a judicial termination of a claim in return for valuable consideration...." *Id.* at 1342.

 

tiff could argue that the settlement itself was conditioned on the Fawcett's cooperation at trial or that Fawcett was promised future employment or compensation. However, the existence of unaccepted proposals alone do very little to establish bias and, at any rate, any marginal relevance is outweighed by the privileged nature of settlement discussions.

Thus, in light of the expectation of privacy inherent in such settlement discussion, the important public policy reasons for encouraging such discussions, and the ability of the plaintiff to secure much of the requested information by other means, the court hereby denies the plaintiffs' motion to compel the production of those documents referred to in Request No. 31.

IT IS SO ORDERED.