[Civ. No. 55930. Second Dist., Div. Two. Dec. 19, 1979.]

GLENDON CRAIG, as Commissioner, etc.,
Plaintiff and Respondent, v.
THE MUNICIPAL COURT FOR THE INGLEWOOD
JUDICIAL DISTRICT OF LOS ANGELES COUNTY,
Defendant and Respondent;
STEVEN GREGORY, Real Party in Interest and Appellant.

70

■■■■■■■■

■■■■■■■■■■■■■■■■

COUNSEL

Floyd Zagorsky for Real Party in Interest and Appellant.

George Deukmejian, Attorney General, and Richard M. Radosh, Deputy Attorney General, for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

OPINION

**COMPTON, J.**—Steven Gregory, a defendant in a pending misdemeanor prosecution for resisting arrest and battery upon officers of the California Highway Patrol, obtained a discovery order in the municipal court for production of the names and addresses of all persons arrested by the officers for similar charges during the preceding two years.

. The Commissioner of the California Highway Patrol petitioned the superior court for a writ of mandate directing the municipal court to vacate the discovery order. The superior court determined that the usefulness to defendant of arrestees' names and addresses was of minimal, speculative and remote value and violated the privacy of the arrestees. A peremptory writ of mandate was issued. The defendant, who is the real party in interest, has appealed. We affirm.

■ A defendant's right to a fair trial and the preparation of an effective and intelligent defense entitles him to pretrial discovery of all relevant and *reasonably accessible* information. (*Pitchess* v. *Superior Court*, 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305]; *Cash* v. *Superior Court*, 53 Cal.2d 72 [346 P.2d 407].) The request for discovery must describe the information with reasonable specificity and present a plausible justification for production of the items requested. (*Hill* v.

*Superior Court*, 10 Cal.3d 812 [112 Cal.Rptr. 257, 518 P.2d 1353]; *Joe Z.* v. *Superior Court*, 3 Cal.3d 797 [91 Cal.Rptr. 594, 478 P.2d 26].)

■ "'A showing . . . that defendant cannot readily obtain the information through his own efforts will ordinarily entitle him to pretrial knowledge of any unprivileged evidence, or information that might lead to the discovery of evidence, . . . if it appears reasonable that such knowledge will assist him in preparing for his defense . . . .'" *Lemelle* v. *Superior Court*, 77 Cal.App.3d 148, at p. 162 [143 Cal.Rptr. 450].) Although the defendant need not demonstrate that the evidence he seeks would be admissible at trial, he must make a showing that the requested information will facilitate ascertainment of the facts and a fair trial.

■ In the final analysis a motion for discovery by an accused is addressed to the sound discretion of the trial court, which has the inherent power to order discovery in the interests of justice. (*People* v. *Terry*, 57 Cal.2d 538 [21 Cal.Rptr. 185, 370 P.2d 985]; *Hill* v. *Superior Court, supra*, 10 Cal.3d 812; *Powell* v. *Superior Court*, 48 Cal.2d 704 [312 P.2d 698].)

Our review here is of the superior court's action in issuing its writ of mandate. The trial court's discretion has been overtaken by the action of the superior court. ■ The question before us is whether there was an abuse of discretion by the superior court. (*Mellinger* v. *Municipal Court*, 265 Cal.App.2d 843 [71 Cal.Rptr. 535]; 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 178, pp. 3938-3939; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 242, 243, pp. 4234-4235; also compare the principles of *Moran* v. *Board of Medical Examiners*, 32 Cal.2d 301 [196 P.2d 20], and *Yakov* v. *Board of Medical Examiners*, 68 Cal.2d 67 [64 Cal.Rptr. 785, 435 P.2d 553].)

Initially, defendant, inter alia, sought copies of the arrest reports on all arrests made by the officers during the preceding two years for charges similar to those lodged against defendant. The request was modified to simply include the names and addresses of the arrestees.

The defendant asserts that he cannot procure the requested information through his own efforts and his position is that there is a *possibility* that other persons arrested by the same officers would testify to a pattern of violent conduct which would be relevant to his defense. (Evid. Code, § 1103; *Kelvin L.* v. *Superior Court*, 62 Cal.App.3d 823, at p. 828 [133 Cal.Rptr. 325].)

Defendant does have the benefit of an order which requires disclosure of all material concerning complaints that have been made against these officers for the excessive use of force. What he seeks additionally is the names and addresses of persons arrested by these officers over a two-year period for charges similar to those lodged against defendant in the outside chance that there are persons among that group who were mistreated but failed to complain. It must be emphasized that this group includes, in addition to persons arrested and convicted, persons *who were arrested but not prosecuted or if prosecuted not convicted.*

The currently popular practice of defendants seeking discovery of information concerning the past conduct of the arresting officers had its genesis in *Pitchess* v. *Superior Court, supra,* 11 Cal.3d 531. Thus, it is appropriate to commence our discussion with a brief analysis of that case.

In *Pitchess,* the defendant was charged with battery against several deputy sheriffs. He served a subpoena duces tecum on the sheriff for production of certain records. He asserted that he intended to rely on a defense of self-defense. Implicit in that statement is an admission that he in fact used force on the deputies but claimed justification therefor.

An affidavit in support of the subpoena duces tecum named two persons who had previously filed complaints against the deputies in question but who were unavailable for interview. Also named were two other persons who had reported misconduct of the deputies to the sheriff but who could not presently recall the details of the events. In each instance then a specific need for the subpoenaed records was demonstrated and, as the court in *Pitchess* stated, the documents which defendant sought were described with sufficient specificity to preclude the possibility of a "fishing expedition." The court refused to quash the subpoena duces tecum.

The court there observed, however, that the right of discovery by an accused is not absolute and that the trial court has discretion to balance the value to the accused of the information sought against other legitimate *governmental interests.*

In contrast to the factual situation in *Pitchess* is *Lemelle* v. *Superior Court, supra,* 77 Cal.App.3d 148. There a defendant charged with a number of narcotics offenses, as well as battery on a police officer and

resisting arrest, sought a pretrial discovery order that he be furnished, inter alia, with all crime and arrest reports in which the principal charge was battery or resisting arrest, filed by the arresting officers during the preceding 10 years.

There the defendant filed a declaration in support of his motion in which he alleged on information and belief that the specific officers in question had "individually and in furtherance of a conspiracy filed baseless charges against persons [accused] of committing [violations of Penal Code sections 148, 242, 243]" in order to conceal the fact that they, the officers, were guilty of using excessive force. (*Lemelle*, at p. 163.)

The Court of Appeal in *Lemelle* noted that the defendant, as here, had been provided with all records concerning complaints against the officers for using excessive force, and opined that those records were more likely to lead to the type of evidence which defendant sought than were the arrest reports of third parties.

Finally, the *Lemelle* court concluded that the value to the defendant of the arrest reports was remote, speculative and minimal, and when that fact was balanced against the burden of winnowing the information from the files of the employing police agency, denial of the discovery motion was proper.

In the case at bench a declaration in support of the discovery motion was filed by defendant's *counsel*. It differs from the showing made in *Pitchess* in several respects and from the declaration filed in *Lemelle* in one major respect.

The declaration here does not assert that the defendant will offer a defense of self-defense. It only vaguely describes the theory of defense as "the incident giving rise to the charge in this case was due solely to the *aggressive acts* of the [officers]." (Italics added.)

Next, as distinguished from *Pitchess*, the defendant seeks the names of third party *arrestees* rather than other complainants. Further, the declaration does not identify any specific arrestee or arrests.

In contrast to *Lemelle*, the declaration does not allege, even on information and belief, that the officers in question here have been guilty of

or accused of improper conduct at any time in the past. The declaration simply recites, what is a matter of common knowledge, that from time to time persons do complain about the conduct of Highway Patrol officers and that that department has machinery for investigating said complaints. Finally, the declaration states, on information and belief, that persons from time to time are the victims of excessive force at the hands of California Highway Patrol officers but do not make formal complaints. The declaration states merely that the records *may* contain information about the two officers here involved.

In our opinion, the showing made by the defendant falls far short of presenting a plausible justification for production of the names and addresses of other arrestees. The possible value to the defendant is remote and highly speculative. As we will discuss, *infra*, when that remote and speculative value is balanced against the *legitimate private interest of the third party arrestees*, it is clear that the superior court did not abuse its discretion in issuing its writ of mandate.

While the Supreme Court in *Pitchess* spoke of balancing a legitimate *government interest* against the value of information to an accused and the Court of Appeal in *Lemelle* spoke of balancing the *burden on the government* of producing the requested information against the value thereof, neither court addressed the issue of balancing the interest of private individual third parties in nondisclosure of their criminal records against the interest of an accused in discovering information relevant to his defense.

■   Before embarking on a discussion of this latter concept, we first dispose of defendant's contention that the Commissioner of the California Highway Patrol, or for that matter any other executive agency or the court itself, has no standing to assert an individual's constitutional right to privacy (Cal. Const., art. I, § 1) or statutory right of nondisclosure.

The constitutional provision for privacy is self-executing in creating an enforceable right (*White* v. *Davis*, 13 Cal.3d 757 [120 Cal.Rptr. 94, 533 P.2d 222]) and the statutory scheme restricting access to criminal history records imposes a duty enforced by sanctions, on public officials to prevent unauthorized disclosure. (Pen. Code, §§ 11140 et seq., 13302, 13303, 13304.)

A person who is the subject of an arrest report or other type of criminal history record generally has no way of knowing of its disclosure until after the fact. It would be absurd to require that the arrestees whose names were ordered disclosed by the trial court here, personally appear in order to assert any right of nondisclosure they might have.

■ In the case of a record which is compiled without a person's consent, or with his consent because of some legal requirement and where the subject of the record has a right that access to that record be restricted, the relationship between the custodian of the record and the person who is the subject of the record is analogous to that of attorney-client.

The custodian has the right, in fact the duty, to resist attempts at unauthorized disclosure and the person who is the subject of the record is entitled to expect that his right will be thus asserted.

■ We now turn to the issue of whether the arrestees whose names are sought to be disclosed in this case, have a legitimate interest in nondisclosure which can be properly balanced against the defendant's claim of need.

As was pointed out in *White* v. *Davis, supra*, the full contours of the newly enacted California constitutional provision for privacy (art. I, § 1) have not been determined. The primary focus, however, as described by the proponents of the ballot measure which led to adoption of the constitutional provision, was on the collection and compilation by government agencies of personal data and the use and disclosure of such data.

One important type of data collected by government is, of course, arrest records. It is an understatement to say that the retention and dissemination of arrest records has been the subject of intensive study by the legislative and executive branches of government as well as private organizations for many years. (See *Loder* v. *Municipal Court*, 17 Cal.3d 859, 868, fn. 5 [132 Cal.Rptr. 464, 553 P.2d 624].) The principal concern of those studies has been to limit retention of and access to arrest records without impairing the effectiveness of legitimate law enforcement activities.

In *Loder, supra*, our Supreme Court held that *retention* by a police agency of an arrest record of a person against whom no prosecution has

been instituted, did not violate the constitutional right to privacy. The essential basis for the holding was that California had developed a detailed statutory scheme for limiting access to and disclosure of such records, and that scheme serves as a safeguard against improper dissemination and use of the records. The corollary of the holding is that the person who is the subject of such records does have an enforceable right of privacy in compelling strict compliance with that statutory scheme.

As we have noted earlier, the discovery order here would disclose to defendant the *names and addresses* of persons arrested for the specified charges, whether or not they were ever prosecuted or convicted. The immediate and most obvious result would be that these persons would be sought out by defendant, his counsel or an investigator employed by him, and questioned about the prior arrest—not an entirely pleasant experience for persons who probably assumed that the "book had been closed" on the incident. It takes no great imagination to envision other forms of mischief which could result from the indiscreet use of the information.

Penal Code section 13300, subdivision (b)(8) permits disclosure of certain criminal history information to an attorney representing a person in a criminal case when access is authorized by statutory or *decisional* law. Defendant's counsel here presently has no statutory or decisional law which authorizes him to have access to the information he seeks. He asks us to create decisional law which would authorize such access. Only the most "compelling interest" would justify such action and it does not exist here.

Finally, defendant argues that even though a person who was arrested but not convicted may have a legitimate protectible interest in not having his identity and the fact of arrest disclosed, persons who were *convicted* have no such interest. He points out that court records are public records.

True, court records that have not been sealed under certain statutory authorization, are public records and persons who are the subjects of those records have no right to prevent public access thereto. From a practical standpoint, however, the likelihood that the records could be located by anyone who did not already have some knowledge of the arrests and their location is extremely remote. Thus those convicted

persons enjoy a limited de facto protection against indiscriminate exploitation of the record.

Defendant concedes that he cannot, on his own, locate the records of those individuals who were convicted as a result of arrests by the officers in question. He does not even know if there are such persons. He needs the assistance of the specialized indexing which, he contends, exists within the record system of the California Highway Patrol. We are not certain that the California Highway Patrol has any greater ability than defendant to locate the court records. Even so, we hold that if the California Highway Patrol does have a special method of locating court records, those persons who are the subject of such records, have a legitimate interest in denying governmental assistance to unauthorized third persons in identifying and locating obscure court records of criminal convictions.

Pragmatically, persons *convicted* of charges of assaulting or resisting the officers who arrested the defendant here are the least likely sources of the type of information which defendant seeks. The crux of the matter is that defendant is on a "fishing expedition." If he had even a modicum of specific information bearing on the type of evidence he seeks he would not need the assistance of the California Highway Patrol in locating records of convicted individuals. As to the records of those individuals who were not convicted, their right to privacy outweighs the highly speculative value which disclosure of their identity would be to the defendant.

The judgment is affirmed.

Roth, P. J., and Beach, J., concurred.

A petition for a rehearing was denied January 9, 1980, and appellant's petition for a hearing by the Supreme Court was denied March 13, 1980.