[No. F011779. Fifth Dist. Nov. 22, 1989.]

LINDA DENARI, Petitioner, v.
THE SUPERIOR COURT OF KERN COUNTY, Respondent;
COUNTY OF KERN et al., Real Parties in Interest.

COUNSEL

Ernest C. Chen for Petitioner.

No appearance for Respondent.

B. C. Barmann, County Counsel, and Holly N. Brown Gallagher, Deputy County Counsel, for Real Parties in Interest.

OPINION

ARDAIZ, J.—In her complaint plaintiff and petitioner Linda Denari contends that while being booked into the Kern County jail on July 21, 1985, the authorities, using excessive force, broke her arm. She asserts claims for negligence, intentional tort and violation of 42 United States Code section 1983, the federal civil rights cause of action. Named defendants include the County of Kern, Rita Prunty and Does 1-100.

In a deposition taken of Commander La Fave by petitioner on September 27, 1988, it developed that at least one of the holding cells at the jail was

within sight or sound of the booking area where petitioner claims she was injured. Further inquiries revealed that all arrest and booking information was fed into and stored in a computer. Commander La Fave thought retrieval of such information might be possible.

Petitioner then formally requested: "Any and all writings, records, and other data compilations from which the following categories of information can be obtained: The names, last known addresses, and telephone numbers of any and all persons arrested and booked in the Kern County Jail during the period beginning on July 21, 1985, at 9:00 A.M., and ending on July 22, 1985, at 12:00 noon."[1]

Real parties responded, claiming an absolute privilege not to divulge the information under a series of Penal Code sections: 11140, 13300, 13302 and 13304, and also claiming revelation of the information would violate the privacy rights of the arrestees.

Because one of her claims against real parties is based upon the federal statute—42 United States Code section 1983—petitioner contended the court could not preclude discovery based upon the state privileges. Petitioner urged the court to decide the matter under what she represents as the federal weighted balancing test, which she contended favors the right of a party who shows need to receive the material when it is balanced against the asserted right to privacy. Petitioner basically presumed inconsistent results would come from state law or state judicial construction and federal law. If such were allowed to occur, petitioner argued, the state court could, by its own individual rules and procedures, frustrate the enforcement of section 1983 in state courts. Thus, petitioner concluded, any consequence inconsistent with a federal result and, presumably, less advantageous than the federal result, is subject to preemption by the federal rule.

The transcript of the hearing indicates the court made a tentative ruling against petitioner. Arguments were heard on the tentative ruling and, subsequent to argument, the court ultimately ruled against petitioner. The court stated in part: "They very well may be [subject to a weighing process], and I'm not locking it in concrete here. Now, I haven't been convinced by any authorities that you have cited to that effect, but let me put it to you this way. Nor have I been convinced in reading materials that has [sic] been prepared that it is *that eye witness giving information in a weighing process to say,* well, I think it's important enough there is a reasonable—*there is enough of a showing that this is very likely to produce percipient witnesses*

---

[1] Real parties acknowledged at argument that the information sought can be retrieved only in approximate 12-hour periods as opposed to hour-by-hour.

*that I'm going to violate the privacy rights of these people that may be in that jail.*

". . . I will suggest this, and that is, if at the time of trial or in the course of discovery it is determined that the County has used that information to interview witnesses that were in that cell and have come up with or just used that information, regardless of whether or not they come up with witnesses, then what's good for the goose is good for the gander. And that information is going to be made available to you. . . .

". . . it certainly will prevent there being a one-sided use of information that the County has but cannot disclose under statutory prohibition. And that means as far as the Court is concerned, they can't use it either for the purposes of defending a lawsuit unless that information is made available also to the plaintiff.

"Now, this is without prejudice. If you don't in the course of discovery get more information or, as I say, information that the County has used for its preparation for trial, then I would suggest that you make a further motion or renew this motion and I certainly will consider it.

"At this time, I'm not satisfied that I can issue a blanket order saying we must provide the plaintiff with the names and addresses and phone numbers of everyone that was arrested, of everyone that may have been in that cell at that particular time, and violate their right of privacy and protection of their privacy without further showing." (Italics added.)

The trial court thus utilized a balancing process in denying the discovery request, determining petitioner failed to make a sufficient showing justifying the intrusion upon the purported rights of the individuals here. Petitioner then filed a petition for writ of mandate before this court on March 2, 1989. We issued an order to show cause on June 9, 1989.

 Petitioner contends the discovery privileges under the Penal Code and California Constitution article I, section 1, right to privacy, are "state privileges" and such privileges cannot be invoked in a state court against a plaintiff asserting a federal cause of action for deprivation of civil rights. Petitioner argues that under a federal interpretation of the discovery request herein, she would necessarily prevail and therefore the federal rule preempts any contrary state interpretation.

We conclude the effect upon discovery of the right to privacy accorded our citizens by the California Constitution is not preempted in a state prosecution of a federal section 1983 action. The simple fact that under

certain circumstances the results of such a discovery request may differ in the different forums does not compel a finding of preemption. ■ Further, we find the other statutory privileges claimed by real parties are not supported by the record; we reject their application in the instant case.

DISCUSSION

*Applicability of Penal Code Sections 11140,
13300, 13302 and 13304*

Real parties claimed below the protection of certain Penal Code sections as providing an absolute privilege against discovery. They suggest here that these sections can be used herein to support the result reached by the trial court.

Penal Code section 13300 defines the material protected under its auspices as:

"(1) 'Local summary criminal history information' means the master record of information compiled by any local criminal justice agency pursuant to Chapter 2 (commencing with Section 13100) of Title 3 of Part 4 of the Penal Code pertaining to the identification and criminal history of any person, such as name, date of birth, physical description, dates of arrests, arresting agencies and booking numbers, charges, dispositions, and similar data about such person.

"(2) 'Local summary criminal history information' does not refer to records and data compiled by criminal justice agencies other than that local agency, nor does it refer to records of complaints to or investigations conducted by, or records of intelligence information or security procedures of, the local agency."

In order for this court to conclude the material requested falls within the parameters of Penal Code section 13300 and find it privileged, it is necessary for us to have access to a copy of the material to determine if it appropriately falls within the specifications of the material described in the statute.

Neither the trial court nor this court has a copy of the document or tangible thing requested by petitioner. Indeed, while real parties objected to production based upon claims of privilege, they also represented that "[d]efendant is presently doing a computer search to determine whether the information sought by plaintiff is in fact still available." If the requested material cannot be produced in fact, both the request for the information and this writ petition are moot.

However, it is the burden of the objecting party to support the applicability of a particular privilege. (Code Civ. Proc., § 2031, subd. (f)(3); see *State*

of California ex rel. *Department of Transportation* v. *Superior Court* (1980) 102 Cal.App.3d 25, 31 [162 Cal.Rptr. 78], disapproved on another point in *Davies* v. *Superior Court* (1984) 36 Cal.3d 291, 301 [204 Cal.Rptr. 154, 682 P.2d 349].) Neither the trial court nor this court can determine whether the requested material conforms to that which is privileged under Penal Code section 13300 et seq. Nothing in petitioner's description of her request to compel production necessarily requires that the document be one described in Penal Code section 13300 or that the document is in fact one within Penal Code section 13300. We conclude real parties have failed to demonstrate the applicability of Penal Code section 13300 et seq. to the requested information. ■ ■ ■ ■ We, therefore, do not feel called upon to consider the effects of Penal Code section 13300 on the petition before us.[2]

### Federal Preemption in Section 1983 Actions

■ Petitioner maintains that because one of her claims against defendants is under the federal civil rights statute, 42 United States Code section 1983 (section 1983), real parties' assertion of privilege under state law is inapplicable. Petitioner depends upon two Ninth Circuit federal cases wherein the federal courts hearing section 1983 claims and sitting in California were found properly to have refused to limit discovery based upon California privileges. (See *Breed* v. *United States District Court* (9th Cir. 1976) 542 F.2d 1114; *Kerr* v. *United States District Court* (9th Cir. 1975) 511 F.2d 192, affd. 426 U.S. 394 [48 L.Ed.2d 725, 96 S.Ct. 2119].) Petitioner asserts these cases control here.

At the outset, it is important to note that in the cases cited the question was whether the *federal courts* hearing a federal matter would recognize and enforce state evidentiary privileges. That is to say, would a state privilege be given force in a federal action pursued in a federal court. As indicated in those cases, the answer is no. However, the question before us is whether the entertainment of a federal cause of action in state court preempts the application of a state discovery privilege based upon a state constitutional right to privacy. As the United States Supreme Court explained in *Felder* v. *Casey* (1988) 487 U.S. 131, 140 [101 L.Ed.2d 123, 139, 108 S.Ct. 2302, 2308], the federal court decisions are not dispositive in cases like this "where the question is not one of adoption but of pre-emption."

Petitioner does not argue that if the trial court used state law its denial of discovery was erroneous or an abuse of discretion. Rather, while petitioner agrees a balancing test is appropriate, she represents if the federal balancing

---

[2]Penal Code section 11140, also cited, clearly does not apply as it defines records maintained by the state Department of Justice as defined in Penal Code section 11105. The information requested by petitioner would be "local" if it exists at all.

test was applied, she would receive the information under her present showing. Petitioner maintains the documents sought are relevant to her lawsuit and are reasonably calculated to lead to the discovery of admissible evidence. Thus, because she may not be able to demonstrate the strength of her case without the information contained in the requested documents, doubts must be resolved, at the discovery stage, in favor of the civil rights plaintiff. To that effect, she cites the Northern District of California as concluding the competing interests of the parties justify a "balancing approach that is moderately pre-weighted in favor of disclosure"; the effect of a weighted balancing approach would be to create a presumption in favor of what is perceived as the greater interest. (*Kelly* v. *City of San Jose* (N.D.Cal. 1987) 114 F.R.D. 653, 661.)

Conversely, the approach taken by the courts in California is best illustrated by our discussion in *Binder* v. *Superior Court* (1987) 196 Cal.App.3d 893, 900 [242 Cal.Rptr. 231]: "Even though the inalienable right of privacy guaranteed by the California Constitution is a fundamental interest of our society, other state interests such as facilitating the ascertainment of truth pertaining to legal proceedings compete with this right. (*Board of Trustees* v. *Superior Court* (1981) 119 Cal.App.3d 516, 524-525 . . . .) As noted in the *Board of Trustees* case, *supra,* 'The constitutional right of privacy is "not absolute"; it may be abridged when, but only when, there is a "compelling" and opposing state interest.' (*Id.* at p. 525.) The following guidelines assist in determining when disclosure of private information may be compelled: 'In an effort to reconcile these sometimes competing public values, it has been adjudged that inquiry into one's private affairs will *not* be constitutionally justified simply because inadmissible, and irrelevant, matter sought to be discovered *might* lead to other, and relevant, evidence. [Citation.] " 'When compelled disclosure intrudes on constitutionally protected areas, it cannot be justified solely on the ground that it may lead to relevant information.' " [Citations.] (P)" 'And even when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed; there must then be a "careful balancing" of the "compelling public need" for discovery against the "fundamental right of privacy." ' "

For the sake of analysis herein, we will accept without dispute that the federal test involves a weighted balancing approach that may militate in favor of discovery on the facts before us, and that our state approach would support the denial of disclosure. Thus, the question before us is one of preemption.

Does the protection given the state right to privacy in state court interfere with or impede the prosecution of a section 1983 action arising under the

federal code? In effect, the issue becomes whether the application of our state privilege is antithetical to the enforcement of a federal cause of action necessitating preemption of the state application in order to ensure that pursuit of the federal cause of action is not thwarted in a state court.

In our analysis of the question of whether a state rule is preempted we look to the lead of the Supreme Court in *Felder* v. *Casey, supra,* 487 U.S. 131 [101 L.Ed.2d 123, 108 S.Ct. 2302]. In *Felder,* the court dealt with a governmental tort claim statute requiring that before any suit could be brought in state court against a state or local governmental entity or officer, the plaintiff must notify the entity of the claim, the amount of the claim, and his or her intent to hold the named defendant liable. The statute further required that, in order to afford the defendant an opportunity to consider the requested relief, the claimant must refrain from filing suit for 120 days after providing such notice. Failure to comply with those requirements constituted grounds for dismissal. Needless to say, the section 1983 plaintiff in *Felder* failed to comply with the Wisconsin statute.

The court noted it had recently decided that state statutes of limitations had been applied to section 1983 actions because "it is 'most unlikely that the period of limitations applicable to such claims ever was, or ever would be, fixed [by the forum state] in a way that would discriminate against federal claims, or be inconsistent with federal law in any respect.'" (*Felder* v. *Casey, supra,* 487 U.S. at p. 140 [101 L.Ed.2d at p. 139, 108 S.Ct. at p. 2307] citing *Wilson* v. *Garcia* (1985) 471 U.S. 261, 279 [85 L.Ed.2d 254, 269, 105 S.Ct. 1938, 1949].) The court found, however, that notice-of-claim statutes were not in the same category. "Notice-of-claim provisions, by contrast, are neither universally familiar nor in any sense indispensable prerequisites to litigation, and there is thus no reason to suppose that Congress intended federal courts to apply such rules, which 'significantly inhibit the ability to bring federal actions.'" (*Felder, supra,* 487 U.S. at p. 140 [101 L.Ed.2d at p. 139, 108 S.Ct. at p. 2308]. The court reasoned that application of such claim statutes burdened the enforcement of the federal right by compelling civil rights victims seeking redress in state courts to comply with the requirement not present in enforcement of the same cause of action in a federal court. Further, the court noted that application of such statutes in section 1983 actions brought in state forums would frequently and predictably produce different outcomes in federal civil rights litigation based solely on whether the litigation took place in state or federal court. In effect, the application of such statutes is outcome determinative— enforcement of the statute in state court would result in the barring of the section 1983 action in a state court while the same action could proceed if brought in a federal court.

The court rejected application of such state claim statutes to section 1983 plaintiffs finding they operated as an especially short statute of limitations inuring only to the benefit of the governmental defendant or operated as a type of exhaustion requirement. (*Felder* v. *Casey, supra,* 487 U.S. at p. 150 [101 L.Ed.2d at p. 145, 108 S.Ct. at p. 2312]; see *Patsy* v. *Board of Regents* (1982) 457 U.S. 496 [73 L.Ed.2d 172, 102 S.Ct. 2557].) ■ In deciding that the notice-of-claim provision was preempted, the court considered many factors. In deciding the merits of petitioner's claim we must similarly consider those same factors.

Our reading of *Felder* reveals the pertinent considerations to include: 1) whether the statute "conflicts both in its purpose and effects with the remedial objectives of § 1983" (*Felder* v. *Casey, supra,* 487 U.S. at p. 138 [101 L.Ed.2d at p. 138, 108 S.Ct. at p. 2307]); 2) whether the law "immunizes government conduct otherwise subject to suit under 1983" (*ibid.*); 3) whether application of the rule burdens the "civil rights victims who seek redress in state courts to comply with a requirement that is entirely absent from civil rights litigation in federal courts" (*id.* at p. 141 [101 L.Ed.2d at p. 139, 108 S.Ct. at p. 2308]); 4) whether enforcement of such statutes in section 1983 actions brought in state court "will frequently and predictably produce different outcomes in federal civil rights litigation based solely on whether that litigation takes place in state or federal court" (*ibid.*); and, 5) whether the condition is "a neutral and uniformly applicable rule of procedure" rather than a substantive rule (*ibid.*).

Real parties claim the information requested is privileged based upon the privacy rights of the arrestees. Enacted in 1972, California citizens adopted as a constitutional amendment, article I, section 1 of the California Constitution, the right of privacy. (*White* v. *Davis* (1975) 13 Cal.3d 757, 773 [120 Cal.Rptr. 94, 533 P.2d 222].) ■ "One major purpose of the amendment was to prevent 'the improper use of information properly obtained for a specific purpose . . . for another purpose or the disclosure of it to some third party.'" (*Pitman* v. *City of Oakland* (1988) 197 Cal.App.3d 1037, 1045 [243 Cal.Rptr. 306], citing *White* v. *Davis, supra,* 13 Cal.3d at p. 775.) ■ The courts have repeatedly recognized that release of arrest records or dissemination of information about arrests implicated the right to privacy of the arrestees. (See *Kilgore* v. *Younger* (1982) 30 Cal.3d 770, 794 [180 Cal.Rptr. 657, 640 P.2d 793]; *Loder* v. *Municipal Court* (1976) 17 Cal.3d 859, 864 [132 Cal.Rptr. 464, 553 P.2d 624]; *Pitman* v. *City of Oakland, supra,* 197 Cal.App.3d at pp. 1045-1046; *Hooper* v. *Deukmejian* (1981) 122 Cal.App.3d 987, 1015 [176 Cal.Rptr. 569].)

■ In several different situations the courts have accorded standing to litigants who are the recipients of discovery demands to assert the privacy

rights of third persons not present who would be affected by the litigant's obedience to the order. (*Valley Bank of Nevada* v. *Superior Court* (1975) 15 Cal.3d 652 [125 Cal.Rptr. 553, 542 P.2d 977]; *Mendez* v. *Superior Court* (1988) 206 Cal.App.3d 557, 568 [253 Cal.Rptr. 731]; *Boler* v. *Superior Court* (1987) 201 Cal.App.3d 467, 472, fn. 1 [247 Cal.Rptr. 185]; *Craig* v. *Municipal Court* (1979) 100 Cal.App.3d 69, 76 [161 Cal.Rptr. 19].) Thus, the county here seeks protection from the discovery request for the names, addresses and telephone numbers of arrestees based upon those arrestees' right to privacy.

The court in *Felder* initially intimates that we should examine the challenged rule to see whether it conflicts both in its purpose and effect with the remedial objectives of the civil rights tort. (*Felder* v. *Casey, supra,* 487 U.S. at p. 139 [101 L.Ed.2d at p. 138, 108 S.Ct. at p. 2307].) The recognition of the right to privacy of all citizens of the state, along with the concomitant protection of such right in the context of civil discovery, is certainly not antagonistic in its purpose to the remedial objectives of section 1983; the effect of such right does not necessarily conflict with the objectives of the civil rights tort. "Section 1983 creates a species of liability in favor of persons deprived of their federal civil rights by those wielding state authority. As we have repeatedly emphasized, 'the central objective of the Reconstruction Era civil rights statutes . . . is to ensure that individuals whose federal constitutional or statutory rights are abridged may recover damages or secure injunctive relief.'

". . . Accordingly, we have held that a state law that immunizes government conduct otherwise subject to suit under § 1983 is preempted, even where the federal civil rights litigation takes place in state court, because the application of the state immunity law would thwart the congressional remedy. . . ." (*Felder, supra,* 487 U.S. at p. 139 [101 L.Ed.2d at p. 138, 108 S.Ct. at p. 2307].)

We fail to see how the protection given the right to privacy accorded by our California Constitution interferes generally or specifically with the right of an individual to pursue redress where his/her federal constitutional or statutory rights are abridged. Further, protection of the right to privacy in civil discovery does not operate to immunize or protect in any way governmental conduct which is otherwise actionable under section 1983. (*Felder* v. *Casey, supra,* 487 U.S. at p. 139 [101 L.Ed.2d at p. 138, 108 S.Ct. at p. 2307].) Indeed, state safeguards of its citizens' right to privacy are directed against, more than anything else, intrusive governmental conduct.

Also, the court in *Felder* inquired whether application of the rule in state courts burdened civil rights litigants in a way entirely absent from the federal court. (*Felder* v. *Casey, supra,* 487 U.S. at p. 139 [101 L.Ed.2d at

p. 138, 108 S.Ct. at p. 2307].) The *Felder* court noted that claims provisions "are neither universally familiar nor in any sense indispensable prerequisites to litigation"; by contrast, the existence of a right to privacy and its protection in discovery is neither an unfamiliar nor unexpected consideration in pursuit of litigation such as before us. The California Constitution explicitly recognizes the right to privacy and the state courts recognize the right as supplying a qualified privilege to a discovery demand; the United States Constitution does not expressly contain a clause devoted to the right to privacy and the federal courts do not consider the right to privacy as creating a privilege to discovery requests. However, the federal courts do recognize that each citizen enjoys a general right to privacy and will protect against intrusion of such rights in the context of discovery by issuing protective orders.

In *Seattle Times Co.* v. *Rhinehart* (1984) 467 U.S. 20 [81 L.Ed.2d 17, 104 S.Ct. 2199], the United States Supreme Court reviewed a First Amendment challenge to a discovery protective order issued pursuant to a Washington State rule of civil procedure which was identical to federal rule 26 (c). Rule 26(c) deals generally with the court's power to issue protective orders. The court in turning aside the challenge noted: "It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties.[21] The Rules do not distinguish between public and private information. Nor do they apply only to parties to the litigation, as relevant information in the hands of third parties may be subject to discovery.

"There is an opportunity, therefore, for litigants to obtain—incidentally or purposefully—information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes." (*Seattle Times Co.* v. *Rhinehart, supra,* 467 U.S. at pp. 34-35 [81 L.Ed.2d at p. 28, 104 S.Ct. at pp. 2208-2209], fn. omitted; see also *McCarthy* v. *Barnett Bank of Polk County* (11th Cir. 1989) 876 F.2d 89; *Harris* v. *Amoco Production Co.* (5th Cir. 1985) 768 F.2d 669, cert. den. (1986) 475 U.S. 1011 [89 L.Ed.2d 302, 106 S.Ct. 1186].)

The application of the balancing process alluded to in *Seattle Times* is more specifically addressed in *Breed* v. *United States District Court, supra,*

---

"[21] Cf. *Whalen* v. *Roe,* 429 U.S. 589, 599 (1977); *Cox Broadcasting Corp.* v. *Cohn,* 420 U.S. 469, 488-491 (1975). Rule 26(c) includes among its express purposes the protection of a 'party or person from annoyance, embarrassment, oppression or undue burden or expense.' Although the Rule contains no specific reference to privacy or to other rights or interests that may be implicated, such matters are implicit in the broad purpose and language of the Rule."

wherein there was an application for the files of minors at the California Youth Authority. "Balancing the invasion of these minors' rights of privacy against the plaintiffs' need for this information as found by the district court, we do not find petitioner's position so 'clear and indisputable' that extraordinary relief is appropriate." (542 F.2d at p. 1116.)

We do not draw the conclusion, therefore, that the discovery privilege based upon the right to privacy is "entirely absent" from civil rights litigation in federal court.

Next, in *Felder* the court contemplated whether the challenged rule would "frequently and predictably produce different outcomes" based solely upon whether pursued in state or federal court. (*Felder* v. *Casey, supra,* 487 U.S. at p. 141 [101 L.Ed.2d at p. 139, 108 S.Ct. at p. 2308].) Petitioner urges an interpretation of this aspect of *Felder* which would result in the conclusion that any evidentiary and/or privilege consideration applicable under state law that would result in a different consequence than under federal law would be inconsistent with the dictates of *Felder.* We do not read *Felder* so narrowly.

Unlike the circumstances outlined under the Wisconsin statute interpreted in *Felder,* our qualified protection of a privacy right does not play a conclusive role in defining the outcome of the cause of action. Petitioner has in no way demonstrated to this court that application of the privilege founded upon the right to privacy will always result in barring revelation of the information sought or that denial of discovery of that information will necessarily result in failure of a section 1983 cause of action pursued in state court. This is not to say that in a particular case the results might not differ depending upon the forum, only that the rule itself is not outcome determinative with respect to the litigation in general.

It should be remembered that when a state court in California is deciding whether to recognize the claim of privilege based upon the right to privacy, it will consider, as weighing in favor of discovery, the importance or primacy of the evidence sought to the plaintiff's case. (See *Binder* v. *Superior Court, supra,* 196 Cal.App.3d at p. 900.) California has not construed the right to privacy as absolute. In deciding whether to allow a discovery demand which trenches upon the right to privacy, California courts balance the public need against the weight of the right. It may be reasonably expected, therefore, that where the sought-after evidence was anticipated to play a major role in plaintiff's case, the right to privacy would give way under the California balancing test. This reduces the likelihood of differing results in different forums.

■ Finally, the *Felder* court considered whether the rule was "a neutral and uniformly applicable rule of procedure." (*Felder* v. *Casey, supra,* 487 U.S. at p. 141 [101 L.Ed.2d at p. 140, 108 S.Ct. at p. 2308].) ■ ■ Here, of course, the limits on discovery pursuant to the right of privacy apply in both civil and criminal cases (see *Mendez* v. *Superior Court, supra,* 206 Cal.App.3d 557, 566-567, and fn. 4; *Craig* v. *Municipal Court, supra,* 100 Cal.App.3d 69, 76-77) and are equally applicable to all parties. There is nothing inherently biased in a rule allowing the limitation of discovery where it infringes upon the right of privacy; such rule does not inevitably favor any party to any litigation.

Thus, a review of the challenged rule demonstrates that under none of the criteria discussed by the court in *Felder* v. *Casey* should the qualified "privacy" privilege against discovery be preempted when the state court is the forum of choice for federal claims under section 1983. Such privilege in purpose or effect neither aids the governmental party nor hinders the private plaintiff; protection of the right to privacy can also be a factor in the allowance of discovery in federal courts which makes it less likely this uniform rule of procedure will often result in the outcome of the litigation differing in state as opposed to federal courts.

Having determined that application of the right to privacy under our California Constitution is not preempted in the instant case by federal interpretations, and given that petitioner is not challenging the court's ruling under state law, the order to show cause is discharged and the petition for writ of mandate is denied.[3]

Stone (W. A.), Acting P. J., and Brown (G. A.), J.,* concurred.

---

[3] We do note the trial court herein specifically denied the request for discovery without prejudice to the request being renewed upon further showing. Petitioner has not challenged the denial of discovery under state law. We do not address the issue of whether the trial court's restrictions on further discovery or considerations weighing in favor of further discovery were appropriate. Issues surrounding the showing to be made on further application for discovery are best resolved in the event such application is made.

* Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.