**Susan LARSON, Plaintiff,**

v.

**Brent HARRINGTON, et al., Defendants.**

**No. Civ S96–2018–GEB–PAN.**

United States District Court,
E.D. California.

June 29, 1998.

David L. Perrault, Hardy, Erich, Brown and Wilson, Sacramento, CA, Roger Allen Brown, Sonora, CA, for Plaintiff.

Laurence L. Angelo, Angelo, Kilday and Kilduff, Sacramento, CA, for Defendants.

## ORDER

NOWINSKI, United States Magistrate Judge.

Susan Larson sues Brent Harrington and Calaveras County under 42 U.S.C. § 1983 and state law. Plaintiff alleges she was sexually harassed by Harrington while employed by Calaveras County and that her employment· was terminated in retaliation for her refusal to continue to submit to Harrington's sexual advances; she also alleges that Harrington defamed her.

The parties agree that the county hired Larson in 1985, that she was eventually promoted to the position of planning director, and that she was fired in April 1996.

### Meetings Between Harrington and the Board of Supervisors

Harrington was present at closed sessions of the Calaveras Board of Supervisors when the board discussed, first, plaintiff's promotion to planning director and, later, her termination. At his deposition, Harrington refused to answer any questions about the meetings. Harrington based his refusal upon California's Brown Act, Cal.Gov.Code §. 54950, et seq. Larson moves to compel Harrington's responses. Harrington opposes upon the original ground and also attorney-client privilege, which plaintiff claims he waived by not asserting it during his deposition.

Federal law governs the parties' dispute. Fed.R.Evid. 501; see Jackson v. County of Sacramento, 175 F.R.D. 653 (E.D.Ca.1997). This principle is recognized alike by California and federal courts. United States v. Reynolds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953) (applying federal common law privilege to Federal Tort Claims Act suit); Breed v. United States Dist. Court, 542 F.2d

1114 (9th Cir.1976); Denari v. Superior Court, 215 Cal.App.3d 1488, 264 Cal.Rptr. 261 (1989). State constitutional privacy protections in large part reflect dissatisfaction with a perception that federal law inadequately protects privacy. Ken Gormley, One ·Hundred Years of Privacy, 1992 Wis.L.Rev. 1335, 1420 (1992).[1] Accordingly, they are an inherently unlikely place to look for insight into federal privacy law. That is not to say that federal courts cannot learn from the states. Thus in Jaffee v. Redmond, 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996) the Supreme Court found a federal psychologist-patient privilege based upon developments in the law of the 50 states as a whole; c.f. Tennenbaum v. Deloitte & Touche, 77 F.3d 337 (9th Cir.1996) (decided before Jaffee ). But resort to idiosyncratic privacy law ·of the forum state to inform federal law has only the obvious potential to undermine federal law intended to apply uniformly throughout all the states. See also Swidler & Berlin v. United States, —— U.S. ——, 118 S.Ct. 2081, 2084–86, 141 L.Ed.2d 379 (1998) (Court looked for nationwide consensus without regard to situs of parties' communication, relationship, or explicitly rejected "exceptional" California law).

Harrington did not waive the attorney-client privilege by failing to claim it at his deposition. See Fed.R.Civ.P. 32(d)(3)(B).

■ Defendants contend all pertinent discussions by the board are within the attorney-client privilege because Spencer Batchelder, counsel for Calaveras County, was present at the meetings and at each of them "provided legal advice and counseling" to the board.

At these meetings the board, as client, may have communicated information to Batchelder, as attorney, in furtherance of obtaining legal services. But such discrete communications would nevertheless not be within the privilege unless made in confidence, viz. not unnecessarily disclosed to bystanders. The

1. The right of privacy was added to the California Constitution in November 1972 in opposition to perceived proliferation of government snooping and data collecting. See White v. Davis, 13 Cal.3d 757, 120 Cal.Rptr. 94, 533 P.2d 222 (1975). Even under this provision, unless there

is an obvious invasion of an interest "fundamental to personal autonomy," California courts employ the same sort of balancing tests that federal courts use. See Hill v. National Collegiate Athletic Assn., 7 Cal.4th 1, 26 Cal.Rptr.2d 834, 865 P.2d 633 (1994).

record does not show who was present at the meetings and thus does not support a finding that this element of the privilege was satisfied. Even if it were, however, the fact that confidential communications within the privilege may have been made at the board meetings does not cloak the entire proceeding in secrecy. The agendas for the pertinent board meetings in April 1996 show that they were closed not to obtain legal advice but to consider disciplining a public employee and those discussions are certainly not within the attorney-client privilege.

### Harrington's Harassment of Others

Harrington's harassment of others is relevant to Larson's claim. It is directly relevant to Larson's claim that Harrington created a hostile work environment. Larson also claims she was fired because she refused to submit to Harrington's sexual demands. Harrington and the county contend they fired Larson for good cause.[2] Harrington's harassment of others is relevant to prove the true motive. *Heyne v. Caruso,* 69 F.3d 1475 (9th Cir.1995).

At their depositions, Harrington and other county employees, invoking a privilege for private matters, refused to answer questions about whether Harrington sexually harassed others, including the county director of human resources, and whether Harrington told others that he was having an affair with a county employee and previously had an affair with a subordinate when he worked for Los Angeles County. Harrington, who had reviewed his own personnel file, also refused on the same ground to reveal whether it contained any complaints and whether he had been disciplined.

There is no discrete federal privilege for private matters. Fed.R.Evid. 501 provides that federal privileges are found in the Constitution, statutes, rules of court and "the principles of the common law as they may be interpreted by the courts … in the light of reason and experience." The following is my sense of where things presently stand regarding privacy in the federal arena.

Federal common law recognizes that conversations between attorney and client, husband and wife, psychotherapist and patient, and priest and penitent may be kept private. *Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) (lawyer-client); *Trammel v. United States,* 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980) (marital privilege); *Jaffee v. Redmond,* 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996) (psychotherapist-patient); *Mockaitis v. Harcleroad,* 104 F.3d 1522 (9th Cir.1997) (priest-penitent).

Federal common law and statutes recognize that people who report crimes to law enforcement agencies are entitled to anonymity. *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); 5 U.S.C. § 552(b)(7). Trade secrets are private. Fed.R.Civ.P. 26, 5 U.S.C. § 552(b)(4). "Clearly unwarranted" government disclosure of personnel, medical and like information is barred upon a demonstration that disclosure is against the public interest. *United States v. Reynolds,* 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953); 5 U.S.C. § 1 (1953); 5 U.S.C. § 552(b)(6); Proposed Rules of Evidence approved by the Supreme Court November 1972, Rule 509, 56 F.R.D. 251[3]

A civil action is government action and thus implicates constitutional privacy protections. *New York Times v. Sullivan,* 376 U.S. 254, 265, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Political beliefs are private. *NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). The marital bedroom is protected from government intrusion. *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). "Deeply personal" matters that may entail embar-

---

2. Inasmuch as Harrington and the county contend that the real reasons they fired Larson were articulated only in discussions that are within the various privileges they have asserted, I am curious how they think they could possibly succeed in meeting plaintiff's prima facie case.

3. The "official information" privilege includes information collected by government that is not available under the Freedom of Information Act,

5 U.S.C. § 552, which exempts among other things "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The privilege may be asserted by an attorney representing the government upon a written statement that disclosure is contrary to the public interest; all counsel are entitled to be heard on the matter.

rassment are private. *Press–Enterprise Co. v. Superior Court,* 464 U.S. 501, 511–512, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (potential jurors); Fed.R.Civ.P. 26(c). Prescription drug information is private. *Whalen v. Roe,* 429 U.S. 589, 598–600, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). Trespass laws and constitutional guarantees protect the privacy of the home against unwanted intrusion. *Frank v. Maryland,* 359 U.S. 360, 79 S.Ct. 804, 3 L.Ed.2d 877 (1959)[4]; *Breard v. City of Alexandria,* 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951); *Martin v. City of Struthers,* 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943). But the government may send an informant into the home to bring out information provided pursuant to misplaced trust. *Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). And civil courts have long exercised power to compel litigants to retrieve and produce private papers and books from their homes. *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). The Constitution does not protect business transactions involving third parties because no participant has a "reasonable expectation" of privacy. *United States v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976). There is a federal "right to be left alone," primarily from excesses of the press, photographers and advertisers but this right does not attach to matters of "public or general interest" or to information voluntarily put in the public domain. *New York Times, supra;* Samuel D. Warren & Louis D. Brandeis, *The Right of Privacy,* 4 Harv.L.Rev. 193 (1890). Conversation outside the home is private if reasonable precautions are taken to keep it so and the expectation that it will be kept private is objectively reasonable. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Employees cannot reasonably expect to keep private personal information that bears directly on their fitness. *National Treasury Employees Union v. Von Raab,* 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989). The reasonable privacy expectations of public employees is far less than in other contexts;

notwithstanding it may contain personal items, an employee's desk may be searched for evidence of work-related misconduct with reasonable grounds for suspecting it. *O'Connor v. Ortega,* 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987). Federal law well may recognize other privacy interests that I have not found. Historically, refusal to provide what is not recognized as private raises an adverse inference against the person. *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). In one of its most recent decisions upon privacy the Court said:

> We are not unaware of the threat to privacy implicit in the accumulation of vast amounts of personal information in computerized data banks or other massive government files. The collection of taxes, the distribution of welfare and social security benefits, the supervision of public health, the direction of our Armed Forces, and the enforcement of the criminal laws all require the orderly preservation of great quantities of information, much of which is personal in character and potentially embarrassing or harmful if disclosed. The right to collect and use such data for public purposes is typically accompanied by a concomitant statutory or regulatory duty to avoid *unwarranted disclosures. Whalen v. Roe, supra,* at 605, 97 S.Ct. 869.

■ In sum federal law determines what is private by looking to objectively reasonable expectations in light of constantly competing principles and for the most part preserves private matters only against "unwarranted" disclosure.

■ Held up to these principles, most of the privacy claims asserted are frivolous. Harrington, for instance, has no objectively reasonable expectation of privacy in matters he previously discussed with co-workers. Nor does Harrington have any reasonable expectation that unwelcome sexual misconduct towards others in a public workplace will be kept private. Jalynne Tobias, county

---

4. The decision quotes William Pitt the Elder who said in a speech on the Excise Bill: "The poorest man may in his cottage bid defiance to all the force of the Crown. It may be frail—its roof may shake—the wind may blow through it—the storm may enter, the rain may enter—but the King of England cannot enter—all his force dares not cross the threshold of the ruined tenement." In 1774 John Adams admonished a jury "An Englishman's dwelling house is his castle. The law has erected a fortification around it."

personnel director, certainly has no objectively reasonable expectation that Harrington's sexual misconduct toward her or others in the workplace will remain private.

Harrington refused to reveal when he began dating the woman he married in October 1990 after obtaining a divorce in October 1988. He refused to say whether John Crane ever disciplined him and whether Dave Doody took a leave of absence from work on account of stress. Mary Pitto refused to answer whether Harrington had ever commented on the capabilities of Dan Seider, one of the county's employees, or whether Larson had ever said she'd been instructed to fire Seider. These matters may implicate legitimate concern about privacy. Defendant does not contend that this information is not relevant to plaintiff's claims. Thus, defendant's privacy concerns compete with plaintiff's right to access to the courts to seek redress. Both interests can be accommodated. This and like testimony should be taken on condition that, subject to further order, the evidence be disclosed to no one but the attorneys for the parties and others entitled to be present during the examination.

### Witness' Prior Recorded Statement

 Before her deposition, Mary Pitto reviewed the transcript of a statement she previously gave; she produced the transcript at her deposition but redacted parts that she claimed were private and parts referring to a conversation with Batchelder. Plaintiff argues that this use resulted in waiving any privileges.

Plaintiff has not demonstrated any protectable privacy interest in any part of the transcript.

For all the record shows, Pitto's recorded statement was neither one made to nor intended for Batchelder but, rather, a statement made for some other purpose that disclosed prior communications between Pitto and Batchelder. Such a statement is not within the attorney-client privilege.[5]

### Notes of Meetings

Harrington and Tobias took notes when they met with Larson on April 11, 1996, pursuant to instructions from the board of supervisors "to discuss some concerns relative to her performance." Harrington now argues the notes are protected by the attorney-client privilege because Batchelder requested Harrington make them and Harrington delivered them to Batchelder within 24 hours of the meeting. Harrington testified that he recorded "a few very simple comments during the discussion with Susan and then prepared more detailed notes afterwards."

According to Harrington's account, the practical effect was that Batchelder told Harrington to write Batchelder about what happened at the meeting. Harrington's "notes" are thus within the attorney-client privilege.

Harrington also made notes of discussion he had with Mr. Pederson and Miss Biggs. He testified that he made the notes "on [his] own initiative" but gave them to Batchelder. These notes are not within the attorney-client privilege because although they came into counsel's possession they were not made as communications from client to attorney.

### Gifts

Larson accused Harrington of defaming her by accusing her of a crime for failing to report gifts. Apparently "Ralph" gave Larson a trip to a professional football game and two rings. Harrington refused to testify whether he spoke with Batchelder about whether those gifts should have been reported. This communication is within the attorney-client privilege.

### Conclusion

Plaintiff's motion is granted in part and denied in part as explained above.

[black bar]

---

5. Accordingly, it is not necessary to address whether use of a privileged record to refresh recollection in aid of testifying results in waiver of the privilege, though I am inclined to believe it does.